[No. 81193-8.    En Banc.]
Argued March 26, 2009.    Decided August 6, 2009.

THE STATE OF WASHINGTON, *Respondent*, v. DAVID ELVIN MCCORMICK, *Petitioner*.

*Eric Broman* (of *Nielsen, Broman & Koch, PLLC*), for petitioner.

*Janice E. Ellis, Prosecuting Attorney* and *Mary K. Webber, Deputy*, for respondent.

¶1 FAIRHURST, J. — David Elvin McCormick challenges the revocation of his special sex offender sentencing alternative (SSOSA) suspended sentence for violating the condition that he not frequent areas where minors are known to congregate. Before this court, McCormick argues that (1) the condition requires the State to prove he willfully violated the condition, (2) the due process clauses of the state

and federal constitutions require the State to prove he willfully violated the condition, and (3) there was insufficient evidence for the trial court to revoke his SSOSA sentence. We reject McCormick's arguments and affirm the trial court's revocation of his SSOSA sentence.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶2 In 2000, McCormick was convicted of first degree rape of a child under the age of 12 for raping his 11 year old developmentally disabled granddaughter. The trial court determined McCormick would be sentenced to 123 months' imprisonment but found McCormick qualified for a SSOSA sentence. In imposing the SSOSA sentence, the trial court set a number of conditions, including that McCormick "not frequent areas where minor children are known to congregate, as defined by the supervising Community Corrections Officer" and "[p]articipate and make progress in sexual deviancy treatment [with a] treatment provider acceptable to the Court." Def.'s Clerk's Papers (DCP) at 46.

¶3 In 2003, the trial court ordered the sentencing condition requiring McCormick to successfully complete sexual deviancy treatment satisfied and relieved McCormick from continuing treatment. In 2004, the State and McCormick stipulated that McCormick had violated a term of his probation by having contact with minor children and sanctioned him to reenroll in sexual deviancy treatment. In 2005, the trial court found McCormick again violated the terms of his probation by frequenting areas where children congregate by visiting a church, a park, and a school on three separate occasions. The trial court sanctioned McCormick to 120 days of confinement and to reenrollment in sexual deviancy treatment.

¶4 In March 2006, McCormick's community corrections officer (CCO) received a call from David Bralley, a housemate of McCormick's. Bralley informed the CCO that McCormick has been a regular visitor at the St. Vincent de Paul Food

Bank located on the premises of the Immaculate Conception Grade School. Bralley stated that most recently, McCormick arrived at the food bank at around 7:30 a.m., while the food bank operates from 9:00 a.m. to 10:30 a.m. The CCO visited the food bank one morning and observed numerous minors in close proximity. McCormick admitted to the CCO he visited the food bank but denied seeing any minors present or knowing it was on school property. As churches and schools are considered places where children are known to congregate, the CCO determined McCormick violated the terms of his supervision.

¶5 The CCO talked to McCormick's sexual deviancy treatment therapist and advised him McCormick would be taken into custody because of violations of supervision. After learning McCormick had been loitering at or near a church school, the therapist concluded McCormick had violated the terms of his treatment contract and the therapist terminated McCormick's treatment program. The CCO submitted a notice of violation alleging McCormick had violated the conditions of his suspended sentence by frequenting a place where minors are known to congregate and by failing to complete sexual deviancy treatment. The CCO recommended the court revoke McCormick's SSOSA sentence. The State subsequently petitioned for an order modifying the SSOSA sentence, revoking the SSOSA sentence, and confining McCormick.

¶6 At the revocation hearing, the State offered a written statement by Bralley but did not call Bralley as a witness. In the statement, Bralley asserted McCormick had visited the food bank regularly and made numerous sexual comments about children.

¶7 The CCO informed the court that, after McCormick had received the 120 days' confinement for the 2005 violations and because of McCormick's possible learning difficulties, the CCO told McCormick specific places he could not go pursuant to the conditions of his SSOSA sentence. The CCO specifically instructed McCormick that places he cannot frequent include "[p]arks, schools, churches, day cares,

movie theaters, shopping malls, bowling alleys, skating rinks, video arcades, Boys and Girls Club, et cetera." Transcript (TR) at 9. The CCO invited McCormick to ask any questions about places he had gone before. The CCO also stated the high school McCormick had been sanctioned for visiting in the second violation was located across the street from the same food bank.

¶8 The CCO described the location of the food bank and its proximity to the school as:

> The food bank is in the same building as I believe it's the second grade and the art and music classes, and they do tutoring over there. The entrance is just right around the corner.
>
> Now, the food bank is in the basement, and you go down these stairs. It's in the back alley, but it is clearly on school property which he is not allowed to frequent.
>
> . . . .
>
> Clearly, right across the street - - well, first, there is the high school, which he was violated for before, and it is one block away from the grade school. The high school is here, and then over here is the convent, which has now been turned into - - because I guess there aren't any nuns, it has been turned into like the second grade, the art and music, and tutoring.
>
> Underneath, in the basement, which you go down some stairs, is where the food bank is. I had reports that McCormick was showing up there an hour, hour-and-a-half before the food bank opened, loitering on the sidewalk, which is in clear vicinity of not only the high school, which is the next block up, but the parking lot for the grade school, the grade school, and kitty-corner from that, I believe is the church. It might be the church or the gymnasium. It might be attached, I don't know.

TR at 8-9, 11-12. Because McCormick did not disclose this violation and the prior violations and because several polygraphers would not polygraph McCormick due to his low IQ (intelligence quotient) and medication, the CCO believed McCormick was at high risk to reoffend and was difficult to monitor in the community.

¶9 McCormick's defense counsel submitted an affidavit averring that McCormick went to the food bank only once a

month and did not arrive an hour and a half early, that the food bank does not appear to be located in a school, that Bralley has an extensive criminal record, and that McCormick had been going to the food bank for years and believed his prior CCO knew this. Defense counsel stated that children get dropped off at the school at approximately 8:00 a.m. and are walked over to the building where the food bank is located. Defense counsel argued McCormick had not technically violated probation. Defense counsel maintained McCormick was at low risk to reoffend because his crime involved one victim who was a relative.

¶10 The trial court revoked McCormick's SSOSA sentence, reasoning:

> I think it's clear there is a violation. Mr. McCormick was on the list at the food bank, and the food bank is on school property. Though it may not be located in the main school, there are children that take classes at the school and who are present at the time that Mr. McCormick is there in coming and going apparently. Even though they may not be dropped off there, they have to get there in some way.
>
> I don't know whether Mr. McCormick is unwilling or simply unable to follow the conditions and requirements set by the Court and by his CCO. But [the deputy prosecuting attorney] said this isn't the first time Mr. McCormick has been here for similar violations. The Court has explained to him that he can't go to places where children are congregating. His community corrections officer has explained that to him. They have taken great pains to try to make that clear to him knowing he has learning disabilities. There are IQ and learning disabilities present here. If those are the issues that are precluding Mr. McCormick from following the requirements or he simply chooses not to follow the requirements. I don't know.
>
> I'm taking into account the fact that this is a food bank. There needs to be explicit authority from this community corrections officer to be there in that location. He didn't have that authority. In fact, she wouldn't give that authority, nor would the Court approve in advance Mr. McCormick going to that location knowing that it is part of the school and there are children there.

TR at 15-16.

¶11 On appeal, McCormick argued, among other things, the trial court was required to find that his violations were willful before it could revoke his suspended sentence and there was insufficient evidence to support the revocation. In a partially published opinion, the Court of Appeals affirmed, holding a finding of willfulness was not required. *State v. McCormick*, 141 Wn. App. 256, 261-63, 169 P.3d 508 (2007). We granted review. *State v. McCormick*, 164 Wn.2d 1002, 190 P.3d 55 (2008).

## II. ISSUES

A. Did the condition require the State to prove McCormick acted willfully?

B. Do the due process clauses of the state and federal constitutions require the State to prove a willful violation of community custody conditions before revoking a suspended sentence?

C. Was the evidence sufficient to support the trial court's revocation of the suspended sentence?

## III. ANALYSIS

A. Did the condition require the State to prove McCormick acted willfully?

¶12 One of the conditions of McCormick's SSOSA sentence required that he "not frequent areas where minor children are known to congregate, as defined by the supervising Community Corrections Officer." DCP at 46. McCormick argues the condition required the State to prove McCormick frequented an area where *he knew* minors congregated. Examining the plain language of the relevant statutes and our case law analyzing the wording of the condition, the State is not required to prove McCormick willfully was in an area where minors are known to congregate.

¶13 Under the Sentencing Reform Act of 1981, chapter 9.94A RCW, the trial court may revoke a SSOSA sentence whenever the defendant violates the conditions of the suspended sentence or the court finds the defendant is failing to make satisfactory progress in treatment. Former RCW 9.94A.120(8)(a)(vi) (1998), *recodified as* RCW 9.94A-.670(10).[1] Former RCW 9.94A.120(8)(a)(vi) itself does not require that a violation be willful. Former RCW 9.94A-.200(3)(d) (1998), *recodified as* RCW 9.94A.634(3)(d), outlines the procedures when noncompliance with conditions of a SSOSA sentence occurs. The only time former RCW 9.94A.200(3)(d) mentions a willfulness requirement finding is for failing to pay legal financial obligations and community service obligations.[2] Looking at the plain language of the SSOSA statutes, there is no requirement for a finding of willfulness for a violation of a condition that does not involve legal financial obligations or community service obligations.

¶14 Next, our case law analyzing the wording of the condition does not support McCormick's argument. As McCormick recognizes, in *State v. Riles*, 135 Wn.2d 326, 349, 957 P.2d 655 (1998), Riles argued the condition at issue and a condition requiring him to avoid places where children congregate barred him from all public places. We quickly dispensed with the argument by holding, "The

---

[1] Former RCW 9.94A.120(8)(a)(vi) provides:

The court may revoke the suspended sentence at any time during the period of community custody and order execution of the sentence if: (a) The defendant violates the conditions of the suspended sentence, or (b) the court finds that the defendant is failing to make satisfactory progress in treatment. All confinement time served during the period of community custody shall be credited to the defendant if the suspended sentence is revoked.

Former RCW 9.94A.120(8)(a)(vi) is identical to RCW 9.94A.670(10) in substance. The only difference is the use of the word "offender" in the current version instead of the word "defendant."

[2] Former RCW 9.94A.200(3)(d) provides, "If the court finds that the violation was not willful, the court may modify its previous order regarding payment of legal financial obligations and regarding community service obligations." Former RCW 9.94.200(3)(d) is identical to RCW 9.94A.634(3)(d) in substance. The only difference is the use of the word "restitution" in the current version instead of the word "service."

restriction applies only to places where children commonly assemble or congregate." *Id.* Given our interpretation that the prohibition applies to commonly known places where children assemble or congregate, the wording of the condition did not require the State to prove McCormick willfully frequented a place where he knew children congregated. The trial court did not err.

B. Do the due process clauses of the state and federal constitutions require the State to prove a willful violation of community custody conditions before revoking a suspended sentence?

¶15 Relying on *Bearden v. Georgia*, 461 U.S. 660, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983), McCormick argues the due process clauses of the state and federal constitutions require the State to prove a willful violation of community custody conditions before revoking a suspended sentence.[3] The State argues *Bearden* specifically rejected McCormick's argument.

¶16 In analyzing challenges under the state and federal due process clauses, we have held Washington's due process clause does not afford broader protection than that given by the Fourteenth Amendment to the United States Constitution. *In re Pers. Restraint of Dyer*, 143 Wn.2d 384, 394, 20 P.3d 907 (2001). Nonetheless, there is some established case law from this court examining the scope of the due process right in the context of revocation of probation or a suspended sentence. *See State v. Dahl*, 139 Wn.2d 678, 990 P.2d 396 (1999); *State v. Abd-Rahmaan*, 154 Wn.2d 280, 111 P.3d 1157 (2005).

¶17 The revocation of a suspended sentence is not a criminal proceeding, but rather an extension of the original criminal conviction. *State ex rel. Woodhouse v. Dore*, 69

---

[3] Because the focus of the revocation hearing was primarily on McCormick's presence at the food bank and because McCormick was terminated from the treatment services in great part because of his presence at the food bank, we believe McCormick's violation of the condition that he complete treatment is significantly tied to the condition that he not frequent areas where minors are known to congregate.

Wn.2d 64, 416 P.2d 670 (1966). Accordingly, an offender facing a revocation of a suspended sentence has only minimal due process rights because the trial has already occurred and the offender was found guilty beyond a reasonable doubt. *Dahl*, 139 Wn.2d at 683 (citing *In re Pers. Restraint of Boone*, 103 Wn.2d 224, 230, 691 P.2d 964 (1984); *State v. Nelson*, 103 Wn.2d 760, 763, 697 P.2d 579 (1985)). In *Dahl*, we observed the United States Supreme Court's holding that minimal due process entails

> (a) written notice of the claimed violations; (b) disclosure to the parolee of the evidence against him; (c) the opportunity to be heard; (d) the right to confront and cross-examine witnesses (unless there is good cause for not allowing confrontation); (e) a neutral and detached hearing body; and (f) a statement by the court as to the evidence relied upon and the reasons for the revocation.

*Id.* at 683 (citing *Morrissey v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)).

¶18 The Supreme Court has extended some due process protections when probation is revoked for the failure to pay fines or fees. In *Bearden*, the Court explained how courts should analyze what procedural safeguards should be afforded when the State seeks to revoke an offender's probation or suspended sentence. 461 U.S. at 666. The Court held that

> the issue cannot be resolved by resort to easy slogans or pigeonhole analysis, but rather requires a careful inquiry into such factors as "the nature of the individual interest affected, the extent to which it is affected, the rationality of the connection between legislative means and purpose, [and] the existence of alternative means for effectuating the purpose . . . ." *Williams v. Illinois*, [399 U.S. 235, 260, 90 S. Ct. 2018, 26 L. Ed. 2d 586 (1970)] (Harlan, J., concurring).

*Id.* at 666-67 (most alterations in original).

¶19 In *Bearden*, the Court held fundamental fairness required the State to prove an offender willfully failed to pay a fine or fee imposed by the court in order to punish the

probationer's violation. *Id.* at 666-69. The Court reasoned that to punish an offender who made bona fide efforts to pay a fine or fee essentially amounted to punishment for being indigent and that the lack of fault provided a " 'substantial reaso[n] which justifie[s] or mitigate[s] the violation and make[s] revocation inappropriate.' " *Id.* at 669 (alterations in original) (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 790, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973)). In a footnote, the Court explained the limitations of its holding:

> We do not suggest that, in other contexts, the probationer's lack of fault in violating a term of probation would necessarily prevent a court from revoking probation. For instance, it may indeed be reckless for a court to permit a person convicted of driving while intoxicated to remain on probation once it becomes evident that efforts at controlling his chronic drunken driving have failed. Cf. *Powell v. Texas*, 392 U.S. 514[, 88 S. Ct. 2145, 20 L. Ed. 2d 1254] (1968); *Robinson v. California*, 370 U.S. 660[, 82 S. Ct. 1417, 8 L. Ed. 2d 758] (1962). Ultimately, it must be remembered that the sentence was not imposed for a circumstance beyond the probationer's control "but because he had committed a crime." *Williams*, 399 U.S., at 242. In contrast to a condition like chronic drunken driving, however, the condition at issue here—indigency—is itself no threat to the safety or welfare of society.

*Id.* at 668 n.9.

¶20 In *Bearden*, the Court held due process only required the State to prove an offender willfully failed to pay a fine or fee imposed by the court in order to revoke the probationer's probation. The *Bearden* Court did not address whether a finding of willfulness was required in other settings and, if anything, it indicated a finding of willfulness would not be required if the condition is a threat to the safety or welfare of society.[4] *Id.* Thus, we must conduct a careful inquiry into such factors as the nature of the

---

[4] This statement is consistent with what this court has previously said regarding *Bearden*. In *Madison v. State*, 161 Wn.2d 85, 102, 163 P.3d 757 (2007), we said, "The *Bearden* Court merely held it unconstitutional to revoke *automatically* an indigent defendant's probation for failure to pay a fine, *without evaluating* whether the defendant had made bona fide efforts or what alternative punish-

individual interest affected, the extent to which it is affected, the rationality of the connection between the legislative means and purposes, and the existence of alternative means for effectuating the purpose. *Id.* at 666-67.

¶21 Here, the condition at issue prohibits McCormick from "frequent[ing] areas where minor children are known to congregate." DCP at 46. He argues his due process rights were violated because the State did not prove he was willfully "frequent[ing] areas where minors are known to congregate." *Id.*

¶22 Examining McCormick's interest, the interest alleged is essentially that McCormick can be punished only when he acted willfully in violating the terms of his probation. The interest comes from the idea that a person is punished only for the acts within his or her control.[5] That interest is affected if the State does not have to prove McCormick acted willfully.

¶23 Examining the State's interests, the government has an important interest in protecting society, particularly minors, from a person convicted of raping a child. That interest is rationally served by imposing stringent conditions related to the crime McCormick committed. The condition forbidding McCormick from frequenting areas where minors congregate serves as a way to prevent McCormick from being in a situation where he would have an opportunity to again harm a child.

¶24 Also, McCormick's rights are already diminished significantly as he was convicted of a sex crime and, only by the grace of the trial court, allowed to live in the community subject to stringent conditions. Those conditions, like the one at issue, serve an important societal purpose in that

---

ments might exist." We thus noted the limited application of *Bearden* to automatic probation revocations for failure to pay a fine.

[5] In his supplemental brief to this court and at oral argument, McCormick attempts to compare his case to *Bearden* in that he was punished for being indigent by being punished for going to a food bank. McCormick's argument lacks merit because in *Bearden*, the defendant could not avoid failing to pay the fines. 461 U.S. at 662-64. In this case, there is no evidence McCormick's attending that specific food bank was the only way for him to obtain food.

they are limitations on McCormick's rights that relate to the crimes he committed. *See* former RCW 9.94A.120(5) (1998), *recodified as* RCW 9.94A.670(5)(a); *Riles,* 135 Wn.2d at 349-51 (holding that special conditions on a probationer must be crime-related). Given the strength of that interest and McCormick's diminished rights as someone on a suspended sentence, the balance tips heavily in favor of not requiring a finding of willfulness.

¶25 Looking at the hypothetical scenario where the State is required to prove McCormick acted willfully, it becomes more apparent that due process does not require a finding of willfulness. Regardless of McCormick's intent, if he frequents areas where minor children are known to congregate, he would pose a danger to those minors.[6] Otherwise, McCormick, a person convicted of committing a sex crime against a minor, would be allowed to be repeatedly in close proximity to minors and face no punishment because he did not know minors congregated there, even if it is reasonably obvious to everyone else that this is a place where minors congregate. Given the State's strong interest in protecting the public, McCormick's diminished interest because of his status as a convicted sex offender serving a SSOSA sentence, and that McCormick's proposed scenario leads to dangerous situations where McCormick can frequent places where minors are known to congregate, due process does not require the State to prove that McCormick willfully violated the condition.

¶26 Such a holding fits within the confines of *Bearden.* In explaining the boundaries of its decision, the *Bearden* Court went as far as to say it would be reckless for a court to permit a person convicted of driving while intoxicated to remain on probation once it is evident that efforts at controlling the drunken driving have failed. *Bearden,* 461 U.S. at 668 n.9. Similarly, here, it would be concerning to allow a

---

[6] This does not mean the State does not have to prove McCormick took a volitional act. If McCormick were in an area where minors are known to congregate against his will, then it presents a situation different from the one presented here and may involve a different analysis.

convicted sex offender to frequent a food bank located in a church elementary school, where there is an opportunity to harm a minor. The State's interest is sufficiently strong to not require a finding of willfulness.

¶27 McCormick cites several cases from other jurisdictions to support his argument. Those cases are unhelpful to McCormick. First, McCormick's citations to *People v. Zaring*, 8 Cal. App. 4th 362, 10 Cal. Rptr. 2d 263 (1992); *Van Wagner v. State*, 677 So. 2d 314 (Fla. Dist. Ct. App. 1996); and *State v. Williamson*, 61 N.C. App. 531, 301 S.E.2d 423 (1983), are unhelpful because in none of those cases was the court analyzing whether the federal due process clause required the finding of willfulness. Second, *Messer v. State*, 2006 WY 141, 145 P.3d 457 relies exclusively on *Kupec v. State*, 835 P.2d 359 (Wyo. 1992), another case cited by McCormick. *Kupec*, if anything, cuts against McCormick because it specifically held, " '[I]n order to revoke probation for the violation of a condition of probation not involving the payment of money, the violation must be willful or, if not willful, must presently threaten the safety of society.' " 835 P.2d at 362 (alteration in original) (quoting *State v. Hodges*, 798 P.2d 270, 277 (Utah 1990)). The *Kupec* court added that "a court cannot be prevented from revoking probation in situations where the probationer's conduct is beyond his control and such conduct creates a threat to society." *Id.* Similarly, here, McCormick's presence at a food bank located in a church elementary school creates a threat to the safety of society because he was convicted for a sex crime with a minor. Also, as the trial court said, it did not know if IQ or learning difficulties precluded McCormick from following the requirements or if he simply chose not to follow the requirements.

¶28 If anything, other jurisdictions analyzing the issue have held the State does not need to prove willfulness. In *State v. Hill*, 256 Conn. 412, 773 A.2d 931 (2001), the court held *Bearden* and the cases that relied on it were not applicable when an offender violated a probation condition that he attend periodic meetings. The court held, "If a

defendant is unable to comply strictly with the conditions of probation, even for reasons beyond his control, the legislative policies underlying conditional probation should not automatically require that compliance should be excused as a matter of law." *Id.* at 424. As mentioned above, *Kupec* also provides an exception to the willfulness requirement when the violation presents a threat to the safety of society.[7] *Kupec*, 835 P.2d at 362. Examining the case law from other jurisdictions supports holding that due process does not require the finding of a willful violation of a condition of a suspended sentence.

¶29 After reviewing the interests, the purpose of the condition and its scope, the results of McCormick's proposed scenario, and the case law from other states, we hold the state and federal constitutions do not require the State to prove McCormick willfully violated a condition of his SSOSA sentence.

C.   Was the evidence sufficient to support the trial court's revocation of the suspended sentence?

¶30 McCormick argues the evidence was insufficient to support the revocation of his suspended sentence. He essentially couches the argument as the facts do not demonstrate he knew the food bank was where minors congregate.

¶31 A SSOSA sentence may be revoked at any time if there is sufficient proof to reasonably satisfy the court that the offender has violated a condition of the suspended sentence or failed to make satisfactory progress in treatment. *State v. Badger*, 64 Wn. App. 904, 908, 827 P.2d 318 (1992) (citing *State v. Kuhn*, 81 Wn.2d 648, 650, 503 P.2d 1061 (1972)). Revocation of a suspended sentence due to violations rests within the discretion of the trial

---

[7] The federal circuit courts of appeal have similarly interpreted *Bearden* not to require a finding of willfulness if the violation relates to public safety or crime prevention. *See United States v. Warner*, 830 F.2d 651, 656-57 (7th Cir. 1987); *United States v. Brown*, 899 F.2d 189, 193-94 (2d Cir. 1990); *United States v. Pinjuv*, 218 F.3d 1125, 1131-33 (9th Cir. 2000). Those cases have noted that lack of willfulness can be a factor used by the trial court in fashioning a punishment for the probation violation. That view is consistent with the reasoning used above.

court and will not be disturbed absent an abuse of discretion. *Id.* An abuse of discretion occurs only when the decision of the court is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971); *see State v. Hays,* 55 Wn. App. 13, 16, 776 P.2d 718 (1989).

¶32 Here, the trial court did not abuse its discretion in revoking the suspended sentence. At the hearing, the State presented evidence that the CCO told McCormick he could not frequent churches or schools. McCormick was previously sanctioned for violating the condition that he not frequent areas where children are known to congregate when he went to the high school across the street from the food bank.

¶33 The evidence demonstrates McCormick went to a food bank located in an elementary school that is connected with a church. The trial court could reasonably conclude that the location of the food bank in a building housing a church school presented a risk to the safety or welfare of society. This violation, combined with McCormick's prior violations for visiting a church, high school, and a park on three separate occasions justify revoking McCormick's suspended sentence. The trial court did not abuse its discretion in revoking McCormick's suspended sentence.

## IV. CONCLUSION

¶34 We hold the wording of the condition that McCormick not frequent areas where minors are known to congregate does not require the State to prove McCormick acted willfully. We also hold the state and federal due process clauses do not require the State to prove McCormick willfully violated the condition of his suspended sentence that he not frequent areas where minors are known to congregate because the strong governmental interest in protecting the public outweighs McCormick's diminished interest. Finally, we hold sufficient evidence

supports the trial court's revocation of the suspended sentence. The judgment of the trial court and decision of the Court of Appeals are affirmed.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, CHAMBERS, OWENS, J.M. JOHNSON, and STEPHENS, JJ., concur.

¶35 SANDERS, J. (dissenting) — The majority affirms the trial court's revocation of Daniel McCormick's special sex offender sentencing alternative (SSOSA) sentence for violating the condition that he not frequent areas where minors are known to congregate. Majority at 692. The majority excuses the State from proving that McCormick reasonably should have known that the food bank was an area where minors are known to congregate. Majority at 698-99. The majority holds that "the state and federal constitutions do not require the State to prove McCormick willfully violated a condition of his SSOSA sentence." Majority at 705. I dissent because the State does need to prove McCormick knew the food bank was an area where minors are known to congregate as due process in this context requires the State to prove McCormick willfully violated a condition of his sentencing alternative before revoking it.

¶36 The majority omits important facts about McCormick. McCormick is a disabled 61-year-old man with a low IQ (intelligence quotient) living on $450 monthly disability payments. He is in a wheelchair and has traveled to St. Vincent de Paul food bank for years because it was the closest food bank to his house. McCormick depended on these trips to the food bank to eat. The food bank is located in the basement of a convent, not a grade school. Entrance to the food bank is in an alley separate from the grade school, and the grade school's playground is not visible from the entrance of the food bank. Additionally the food bank has limited hours of operation, opening at 9:00 a.m. McCormick usually arrived at the food bank 15 to 30 minutes before it opened, whereas children are dropped off at the school playground at 7:50 a.m., with classes begin-

ning at 8:00 a.m. Even if McCormick arrived at the food bank at 8:30 a.m., he would not have seen any of the children because they would have been in class.

¶37 The majority does not even require the State to prove McCormick reasonably should have known this was an area where minors are known to congregate. This is minimal given the location of the food bank and the grade school. This invites a mere pretext to revoke McCormick's SSOSA sentence without proof that he even intended to violate the conditions. What threat to society is posed by a person in a wheelchair who goes to a food bank even if, unbeknownst to him, it is near a school?

¶38 The majority opinion runs afoul of *Bearden v. Georgia*, 461 U.S. 660, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983). Danny Bearden pleaded guilty to burglary and theft, but instead of entering a judgment of guilt, the trial court sentenced Bearden to probation and ordered him to pay a fine and restitution. Shortly after Bearden was placed on probation, he was laid off from work and could not find another job. Bearden had only a ninth grade education and could not read. He had no assets and was unable to pay the fine or restitution. The trial court revoked Bearden's probation, requiring him to serve the remainder of his probation in prison. The United States Supreme Court held, "[I]n revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay . . . the court may revoke probation and sentence the defendant to imprisonment . . . ." *Id.* at 672. The Supreme Court required the State to prove the offender willfully failed to pay the fine to constitutionally revoke the offender's probation, otherwise the offender would be punished simply for being indigent. The Court held an offender's probation could not be constitutionally revoked when the offender made a bona fide effort to pay a fine but was unable to do so.

¶39 The majority correctly states, "The *Bearden* Court did not address whether a finding of willfulness was re-

quired in other settings." Majority at 701. But the majority nonetheless forecloses the opportunity here, deciding that McCormick's situation is different from Bearden's, and does not require a finding of willfulness to revoke McCormick's probation. But I can discern no principled distinction.

¶40 The majority in essence punishes McCormick for the same reason the United States Supreme Court refused to punish Bearden: the lack of willful conduct. The majority, in a footnote, simply disposes of punishing McCormick for frequenting a food bank, majority at 702 n.5, stating, "McCormick's argument lacks merit because in *Bearden*, the defendant could not avoid failing to pay the fines. In this case, there is no evidence McCormick's attending that specific food bank was the only way for him to obtain food." Majority at 702 n.5 (citation omitted).

¶41 McCormick needed to go to a food bank to eat. Punishing him for doing so without requiring the State to prove he willfully went to that specific food bank knowing it was located in an area where minors are known to congregate essentially punishes McCormick for being indigent and engaging in conduct he could not reasonably have foreseen violated a condition of his SSOSA. What purpose is served by punishing someone who had no knowledge that a condition was being violated?

¶42 In addition to needing to eat, McCormick had a low IQ, similar to Bearden's situation—his ninth grade education and inability to read. Not requiring the State to prove McCormick acted willfully to frequent areas where minors congregate contradicts the very premise of *Bearden*, 461 U.S. 660. The majority fails to recognize that McCormick was frequenting a food bank because he needed food, not frequenting a school or playground because he "needed" children.

¶43 The *Bearden* Court stated, "Revoking the probation of someone who through no fault of his own is unable to make restitution will not make restitution suddenly forthcoming. Indeed, such a policy may have the perverse effect of inducing the probationer to use illegal means to acquire

funds to pay in order to avoid revocation." 461 U.S. at 670-71. Similarly here, revoking McCormick's probation because he frequents a food bank will not suddenly stop McCormick's need to go to a food bank. And in the end it serves only to exacerbate the situation when McCormick is released from prison, cannot find a job, and still needs to get food from a food bank. The court essentially allows the State to revoke McCormick's SSOSA suspended sentence because he is indigent and lacks knowledge of his alleged transgression.

¶44 The State should at least be constitutionally required to prove McCormick reasonably should have known the food bank was an area where minors are known to congregate. McCormick's due process rights were violated. Failure to require the State to prove McCormick acted willfully contradicts *Bearden*, 461 U.S. 660.

¶45 I dissent.