IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| | ) | |
| Respondent, | ) | No. 80101-5-I |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CHRISTOPHER KYLE SIKES, | ) | |
| | ) | |
| Appellant. | ) | FILED: September 23, 2019 |
| | ) | |

SMITH, J. — In 2015, Christopher Kyle Sikes pleaded guilty to two counts of rape of a child in the first degree. Pursuant to the Sentencing Reform Act of 1981[1] (SRA) and the special sex offender sentencing alternative (SSOSA), the superior court suspended all but 12 months of Sikes's sentence pursuant to 38 conditions. In 2018, the superior court revoked Sikes's suspended sentence due to his failure to comply with certain conditions of his SSOSA.

On appeal, Sikes argues that because various conditions of his sentence were invalid, the trial court erred by revoking his SSOSA. The State concedes that two of the six conditions on which the trial court relied are unconstitutionally vague or must be amended. Notwithstanding the two invalid conditions, the State maintains that the trial court had sufficient evidence to revoke Sikes's SSOSA. Because Sikes admits to violation of the condition prohibiting private

---

[1] Ch. 9.94A RCW.

contact with a victim-aged minor and because the superior court determined he had not adequately progressed in his treatment, we agree with the State. We, therefore, affirm the revocation. But, in light of the State's concessions, we remand to the trial court for amendment of the two conditions. First, the court must amend Appendix H (b) 20 to: "Inform your CCO of any dating relationships in order to verify there are no victim age children involved"; and second, the court must amend Appendix H (b)14 to state: "Do not possess or consume alcohol."

## FACTS

On September 25, 2015, Christopher Sikes pleaded guilty to two counts of rape of a child in the first degree, a violation of RCW 9A.44.073. Sikes admitted to engaging in sexual intercourse with A.S. and J.S.—his adopted sisters, both under the age of 12—on multiple occasions. The trial court sentenced Sikes to 131.9 months to life of confinement, with a lifetime term of community custody. Sikes had no prior criminal history, and the court granted Sikes's request for a SSOSA sentence. Specifically, the court suspended all but 12 months of Sikes's sentence subject to the following requirements: (1) reasonable progress and completion of outpatient sex offender treatment; (2) compliance with treatment provider and community correction officer (CCO) requirements; and (3) compliance with community custody conditions.

The lifetime community custody conditions prohibit Sikes from, among other things: (1) purchasing, possessing, or consuming alcohol; (2) leaving the geographic boundary determined by the CCO; (3) "enter[ing] into any location where alcohol is the primary product"; (4) having "contact with the victims (AS

2

and JS), or with *any* minors that may be biological children, without prior approval of the Court"; (5) "initiat[ing], or hav[ing] in any way, physical contact with children under the age of 18 for any reason, to include in employment, social, and recreational situations"; (6) having "contact with *any* minors or children under the age of 18 without prior approval"; and (7) frequenting any place where children congregate. Additionally, Sikes must participate in and complete a state-approved sexual deviancy treatment program, inform his CCO "of any romantic relationships to verify there is [sic] no victim-age children involved[,]" and register as a sex offender.

On October 10, 2016, upon completion of his 12-month jail sentence, Sikes began sex offender treatment with Daniel DeWaelsche. On May 31, 2017, DeWaelsche stated that Sikes "continue[d] to regularly attend all scheduled therapy sessions and actively participate in his therapy group discussions." At that time, DeWaelsche recommended that Sikes continue treatment. The superior court agreed, finding that Sikes had "yet to fully comply with and successfully complete all of the requirements and conditions of the treatment program ordered."

In June 2017, DeWaelsche contacted CCO Gail DeLaney after finding out that Sikes gave more than $4,000 to a woman, "Chev," for drinking, gambling, and rent.[2] DeWaelsche told Sikes on many occasions to cease contact with her. After the discussion with DeWaelsche, CCO DeLaney met with Sikes. Sikes

---

[2] Chev is referred to by multiple names throughout the record, including Chrep Vat, Chrissy, and Chev. The court will refer to her as Chev because it is the most common.

admitted to giving Chev money to buy alcoholic drinks at a casino and accompanying her therein. CCO DeLaney told Sikes his SSOSA conditions prohibited him from entering the casino. CCO DeLaney requested to meet with Chev if Sikes had a relationship with her, but Sikes denied any romantic or physical relationship.

On September 13, 2017, Sikes admitted to CCO DeLaney that Chev had two daughters, ages eighteen and two, who lived with her. Sikes admitted to having contact with Chev's younger daughter in his car and at Chev's home on multiple occasions. In particular, Sikes admitted that he drove Chev and her daughter to Wild Waves and recreational parks. Sikes disclosed he had been in the presence of Chev's daughter both with and without her present, "having verbal or physical contact with the children '40+ times.'" Eventually, Sikes also admitted that he had paid Chev to touch her breasts.

CCO DeLaney spoke with Chev, who stated that she knew that Sikes was a sex offender and that she didn't "call him a boyfriend." Chev confirmed that Sikes had been to Wild Waves park and that Sikes had been alone with her daughter.

On September 28, 2017, CCO DeLaney filed a notice of violation, recommending revocation of Sikes's SSOSA. The State subsequently filed a "Petition for Hearing to Determine Noncompliance with Condition or Requirement of Sentence" grounded in six alleged violations. On October 25, 2017, DeWaelsche terminated Sikes from his treatment program because of Sikes's continued relationship with Chev and after learning of the incident where Sikes

paid to touch Chev's breasts.

On April 12, 2018, following two hearings, the trial court revoked Sikes's SSOSA. The court concluded that "Sikes, in violating his conditions, has shown that he is not currently amenable to treatment in the community and his SSOSA should be revoked in order to protect the community." The court found that Sikes

1. Fail[ed] to abide by the conditions of the Court and DOC by having contact with minors . . . ;
2. Fail[ed] to abide by the conditions of the Court and DOC by frequenting areas where minors congregate . . . ;
3. Fail[ed] to abide by the conditions of the Court and DOC by failing to remain within . . . Pierce County . . . ;
4. Fail[ed] to abide by the conditions of the Court and DOC by not informing [his CCO] of any romantic relationships to verify if there are no [sic] victim age children involved . . . ;
5. Fail[ed] to abide by conditions of the Court and DOC by purchasing alcohol . . . ; [and]
6. Fail[ed] to make satisfactory progress in treatment.

The court ordered that Sikes serve the remainder of his original sentence in confinement. Sikes appeals.

## DISCUSSION

Sikes argues that the revocation of his SSOSA was not supported by sufficient evidence because two of the community custody conditions on which the trial court relied are improper. The State concedes that the condition regarding "romantic relationships" is unconstitutionally vague and that the condition pertaining to alcohol should be revised to prohibit only the "consumption of alcohol." However, the State argues that sufficient evidence supports the revocation of Sikes's SSOSA. For the reasons that follow, we accept the State's concessions with regard to dating relationships and purchasing alcohol, and conclude that revocation was proper.

## Romantic Relationship Conditions

Sikes argues that Appendix H (b) 20 ordering him to keep his CCO apprised of "any romantic relationships" is unconstitutionally vague. The State concedes and requests that we remand to the trial court to change the condition's language from "romantic relationship" to "dating relationship" in line with recent precedent. "We review community custody conditions for an abuse of discretion." State v. Hai Minh Nguyen, 191 Wn.2d 671, 678, 425 P.3d 847 (2018).

In Hai Minh Nguyen, our Supreme Court noted, in line with 2nd Circuit precedent, that "romantic" is a highly subjective qualifier, but that community custody conditions pertaining to "dating" relationships are distinguishable. Hai Minh Nguyen, 191 Wn.2d at 682-83. A dating relationship, the court held, "is not an unconstitutionally vague term." Hai Minh Nguyen, 191 Wn.2d at 683. We agree with Division III and hold that "romantic relationship" is vague and an invalid community custody condition. See State v. Peters, No. 31755-2-III, slip op. at 15 (Wash. Ct. App. September 17, 2019), http://www.courts.wa.gov/opinions/pdf/317552_pub.pdf. Therefore, we accept the State's concession. We remand to the trial court to revise Appendix H (b) 20 to state: "Inform your community corrections officer of any dating relationships to verify there are no victim-age children involved."

## Alcohol-Related Condition

Sikes argues that the part of Appendix H (b) 14 prohibiting him from purchasing alcohol is invalid because it is not crime-related. Under RCW

6

9.94A.703(3)(f), the court may require the offender to "[c]omply with any crime-related prohibitions." A crime-related prohibition may prohibit only "conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). "The imposition of crime-related prohibitions is generally reviewed for abuse of discretion." State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007).

Here, Appendix H (b) 14 prohibits Sikes from "purchas[ing], possess[ing], or consum[ing] alcohol." The record does not indicate that alcohol contributed to Sikes's crimes in any way. Therefore, Appendix H (b) 14 is not a valid crime-related prohibition under RCW 9.94A.703(3)(f). For this reason, we accept the State's concession that the trial court should strike "purchase" from the condition.

The State also concedes that the trial court should strike "possession" from Appendix H (b) 14. However, Sikes does not challenge this part of the condition, and under RCW 9.94A.703(3)(e), the court had discretion to impose a community custody condition, *whether crime-related or not*, ordering Sikes to "[r]efrain from possessing or consuming alcohol." In other words, only Appendix H (b) 14's prohibition on the *purchase* of alcohol is invalid under the SRA. Therefore, we do not accept the State's concession that "possession" also should be stricken.

## SSOSA Revocation

Sikes contends that—absent consideration of his violation of the two invalid conditions discussed above—there is insufficient evidence to support

7

revocation of his SSOSA. We disagree.

RCW 9.94A.670 allows a "court [to] suspend the sentence of a first-time sexual offender if the offender is shown to be amenable to treatment." State v. Miller, 159 Wn. App. 911, 917, 247 P.3d 457 (2011). "Loss of a SSOSA is a significant consequence to defendants." State v. Sims, 171 Wn.2d 436, 443, 256 P.3d 285 (2011). Even so, the trial court may revoke a SSOSA sentence "at any time if there is sufficient proof to reasonably satisfy the court that the offender has violated a condition of the suspended sentence *or* failed to make satisfactory progress in treatment." State v. McCormick, 166 Wn.2d 689, 705, 213 P.3d 32 (2009) (emphasis added); RCW 9.94A.670(11). The court reviews revocation of a suspended sentence for an abuse of discretion. McCormick, 166 Wn.2d at 705-06. "An abuse of discretion occurs only when the decision of the court is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" McCormick, 166 Wn.2d at 706 (quoting State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

State v. McCormick is instructive here. McCormick was "convicted of first degree rape of a child under the age of 12" and was granted a SSOSA. McCormick, 166 Wn.2d at 693. McCormick regularly visited a food bank located at a church with a grade school, thereby violating a SSOSA condition prohibiting him from frequenting areas where minors congregate. McCormick, 166 Wn.2d at 693-94. McCormick appealed from the trial court's revocation of his SSOSA, and our Supreme Court ultimately held that the trial court did not abuse its discretion. McCormick, 166 Wn.2d at 696-97. Specifically, the court held that sufficient

evidence existed to justify revocation of McCormick's SSOSA, observing that the trial court could reasonably conclude that McCormick's current and past violations "presented a risk to the safety or welfare of society." McCormick, 166 Wn.2d at 706.

State v. Miller also is particularly instructive here. Miller was convicted of rape of a child in the first degree. Miller, 159 Wn. App. at 915. Miller violated a condition of his suspended sentence by being in a romantic relationship with a woman whose minor son was blind and autistic. Miller, 159 Wn. App. at 915-16. Miller appealed the revocation of his SSOSA. Miller, 159 Wn. App. at 915. We concluded that the trial court had sufficient grounds for revocation because of Miller's relationship with the woman, the highly vulnerable child of the victim's age, and Miller's failure to disclose the information to his CCO. Miller, 159 Wn. App. at 919.

Here, Sikes does not challenge the trial court's findings that he: (1) left the geographic area of Pierce County; (2) had contact with minors; (3) frequented areas where minors congregate; and (4) failed to make satisfactory progress in treatment. Therefore, these findings are verities on appeal. See State v. O'Neill, 148 Wn.2d 564, 571, 62 P.3d 489 (2003) (holding that "where [a trial court's] findings are unchallenged, they are verities on appeal").

Like the defendant in McCormick, Sikes frequented areas where victim-aged children were present. And, like the defendant in Miller, Sikes "flagrantly disregarded some of the most serious conditions, other than committing a new offense" by being alone with Chev's victim-aged daughter, having contact with

9

Chev's daughter, and visiting places that children frequent. Miller, 159 Wn. App. at 919-20. Furthermore, like the defendant in Miller, Sikes continued the relationship with Chev and her daughter despite warnings not to do so by both CCO DeLaney and DeWaelsche. See Miller, 159 Wn. App. at 920.

For these reasons, the trial court did not abuse its discretion in revoking Sikes's SSOSA or in concluding that any one of Sikes's violations alone was sufficient for revocation. Specifically and most importantly, Sikes had contact with a minor child of his victims' ages on many occasions and without others present. Moreover, Sikes—who believed his previous offense was not harmful to the victims because he gave the victims material goods—admitted to purchasing items for Chev's daughters. As a separate and sufficient reason for revocation, the court found that Sikes failed to make satisfactory progress on treatment because DeWaelsche discharged Sikes from his treatment program. Revocation was proper.

Sikes disagrees and points to the fact that therapist Paula van Pul stated that Sikes was not a risk to the community and would benefit from her therapy specifically for individuals with special needs, such as Sikes. But Sikes lied to van Pul about the extent of his contact with Chev's daughter, claiming it was only "incidental," and he failed to disclose the sexual contact between Chev and himself. Therefore, Sikes's reliance on van Pul's statements is misplaced.

Applicability of House Bill 1783

As a final matter, Sikes argues that the sentencing court's imposition of a $200 criminal filing fee and interest accrual was improper following the passage

of House Bill 1783. We disagree.

House Bill 1783 made the criminal filing fee inapplicable to indigent defendants and eliminated interest accrual on all nonrestitution legal financial obligations. RCW 36.18.020(2)(h); RCW 3.62.040(5)(b) ("penalties, fines, bail forfeitures, fees, and costs imposed against a defendant in a criminal proceeding shall not accrue interest"); see State v. Ramirez, 191 Wn.2d 732, 739, 426 P.3d 714 (2018). In Ramirez, our Supreme Court held that these amendments apply prospectively to cases pending on appeal from judgment when House Bill 1783 was enacted. 191 Wn.2d at 747. Here, Sikes appeals from a revocation of a suspended sentence, rather than from a final judgment. Therefore, Ramirez does not control, and the original $200 fee and interest were not improper.

We affirm the trial court's revocation of Sikes's SSOSA and its imposition of the $200 criminal filing fee and interest. We remand to the trial court to amend: (1) Appendix H (b) 20 to state: "Inform your CCO of any dating relationships in order to verify there are no victim age children involved"; and (2) Appendix H (b) 14 to state: "Do not possess or consume alcohol."

WE CONCUR: