**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 87265-6-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| CHRISTOPHER M. BOOTH, | |
| Appellant. | |

MANN, J. — Christopher Booth challenges the revocation of his special sex offender sentencing alternative (SSOSA) and reinstatement of his suspended sentence. The evidence establishes that Booth violated several conditions of community custody despite specific instructions from his community corrections officer (CCO). Because the trial court had ample grounds to revoke the SSOSA, we affirm.

I

In 2004, Booth pleaded guilty to two counts of child molestation in the first degree and one count of child molestation in the second degree. At that time, the trial court imposed a SSOSA and suspended the terms of confinement of 75 months for child molestation in the second degree and 130 months to life for the two counts of child molestation in the first degree. The SSOSA also included several relevant conditions of

community custody: (1) obey all rules of the Department of Corrections (DOC); (2) "[n]ot frequent or loiter in areas where children congregate"; (3) notify your employer of your conviction and rules of supervision and treatment; and (4) geographical restrictions as ordered by the CCO.

Booth has a history of lapses in compliance with these community custody conditions. Booth admitted to several violations in 2006. At that time, the trial court declined to revoke the SSOSA, instead sentencing him to 80 days in jail. In 2012, a CCO notified the court about concerns with Booth's compliance with his sentence but did not report any violations.

During a home visit in April 2023, a CCO discovered evidence that a young child lived in the residence, despite restrictions on Booth's contact with minors. When questioned, Booth originally claimed that the items belonged to a neighbor but eventually admitted that he and his girlfriend had a three-year-old daughter. The CCO took Booth into custody for violations of his court order. After additional investigation, DOC reported Booth for multiple violations of his sentence: (1) having direct contact with a minor child without approval from his CCO; (2) holding a position of authority or trust involving minors; (3) frequenting or loitering in areas where children congregate; (4) possessing and consuming alcohol; (5) failing to abide by geographical conditions; and (6) residing with a minor child.

Because of these violations of the conditions of his sentence, the State moved to revoke Booth's SSOSA. In March 2024, the court held a lengthy hearing, during which Booth stipulated to 6 of the violations and requested 12 months of detention, rather than revocation of the SSOSA, based on his performance while on supervision and the

2

context of the violations. The court found that Booth had violated the terms and conditions of his sentence but noted that Booth had many years of success prior to the birth of his child and opined that revocation of the SSOSA was not beneficial to Booth, his child, or the community. However, the court believed Booth had "some thinking errors" that he needed to address and ordered 360 days of confinement, a new sexual deviancy evaluation, and any recommended treatment. The court also amended Booth's judgment and sentence to allow supervised contact with his minor biological child.

Booth received good time and credit for time served, resulting in his release only two months later. After his release from confinement, Booth reported to Thurston County DOC. On May 3, 2024, Booth met his new CCO. Booth claimed that he had previously been allowed to visit parks, malls, farmers markets, and travel outside his county of residence without prior permission. Booth specifically asked to go to the Olympia Farmers Market. The CCO, who had not yet received Booth's supervision file, informed Booth that he could not engage in those activities or visit the farmers market because he likely had specific conditions preventing travel and visiting parks and places where children congregate.

The CCO met with Booth on May 9. At that time, they engaged in a line-by-line review of court and DOC-imposed conditions, and the CCO "offered him the opportunity to ask any clarifying questions, if there was anything he had confusion about or scenarios that he wasn't sure, if he was allowed to do." Booth asked about visiting parks and the Olympia Farmers market. The CCO again denied the request, reminding Booth of the condition preventing him from frequenting areas where minors congregate

and explaining that the family-centered farmers market often has specific events for children resulting in a high likelihood that he would encounter families and minors.

During that conversation, the CCO inquired as to whether Booth had informed his employer of his conviction status and conditions of supervision as required by the community custody condition. Booth admitted that he had not informed his employer, a family restaurant, and was worried about losing his job. The CCO advised Booth to tell his employer before the employer discovered the information from another source.

On May 14, the CCO checked the data for Booth's wearable GPS monitoring device which showed that Booth had spent approximately two hours walking through a city park and the Olympia Farmers market over the weekend. When asked, Booth originally denied that he had gone to the farmers market but admitted his presence after the CCO confronted him with the data from the monitoring device. Booth acknowledged that the CCO had informed him that he could not visit parks and the farmers market, as well as the reason for the prohibition.

A few days later, the CCO called Booth's employer to inquire whether Booth had disclosed his conviction and supervision conditions. Booth had not informed his employer as directed. The CCO issued a notice of violation alleging that Booth had failed to notify his employer and had frequented or loitered in areas where minors congregate by visiting the farmers market and city park.

The State moved to revoke Booth's SSOSA, noting that he committed the current violations less than two months after the court denied the previous motion for revocation. The State argued that Booth "is a substantial risk to the community, has

demonstrated numerous times that he will try to avoid following his SSOSA conditions if he can get away with it, and should have his SSOSA revoked."

Rather than deny the facts of the violations, Booth raised legal challenges to the community custody conditions. He argued that three of the conditions he allegedly violated—do not frequent or loiter in areas where children congregate, obey all DOC rules, and comply with geographical restrictions as ordered by the CCO—are unconstitutionally vague as they are vulnerable to arbitrary enforcement. As to the requirement that he inform his employer of his conviction and supervision status, Booth claimed that the condition did not establish a timeframe in which the employer was to be notified and that he engaged in a conversation with his employer about his criminal history.

The State conceded, and the trial court agreed, that the condition prohibiting Booth from frequenting or loitering in areas where children congregate has been found unconstitutional. As a result, the trial court concluded, "this condition is not enforceable due to being void for vagueness and cannot be the basis for finding a violation." However, the court held that "the conditions that the Defendant comply with geographic boundaries and DOC rules, as applied to Defendant under the facts and circumstances presented, which formed the basis for the first SSOSA violation, are not void for vagueness," because "[a] person of ordinary intelligence would have understood them." Moreover, on the two separate occasions that Booth asked his CCO if he could visit the farmers market and parks, his CCO denied the request both times and ensured that Booth understood the decision. The trial court found that Booth was on notice about the prohibited conduct yet chose to engage in the conduct. Similarly, the trial court

determined the requirement that Booth inform his employer of his conviction and supervision was not vague "[a]s applied to the Defendant under these facts and circumstances."

The trial court found that the State had "clearly" proved both violations of the SSOSA conditions by a preponderance of the evidence. Noting the importance of "honest, open, and full disclosure" in the context of sex offender treatment, the trial court had "grave concern" about Booth's conduct. "[A]fter being told no when asked if he could engage in certain conduct, the Defendant committed said conduct and denied doing so until confronted with objective evidence." He also failed to notify his employer after being expressly told to do so. The court concluded that the SSOSA was no longer appropriate for Booth. The court revoked the SSOSA and reinstated the suspended sentence.

Booth appeals.

II

Booth contends that his violation of the geographical restriction imposed by his CCO was not a sufficient basis to revoke his SSOSA. We disagree.

The trial court may revoke a SSOSA and reinstate the sentence at any time during the period of community custody if there is sufficient evidence to convince the trial court that the offender has either "violated a condition of the suspended sentence or failed to make satisfactory progress in treatment." State v. McCormick, 166 Wn.2d 689, 705, 213 P.3d 32 (2009); RCW 9.94A.670(11). "Revocation of a suspended sentence due to violations rests within the discretion of the trial court and will not be disturbed absent an abuse of discretion." McCormick, 166 Wn.2d at 705-06. A court abuses its

discretion if the decision is manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.  McCormick, 166 Wn.2d at 706.

First, we note that the trial court determined that Booth violated multiple conditions of community custody, but Booth's arguments on appeal only challenge the geographic restriction.  Booth does not dispute that he violated the custody condition requiring him to inform his employer of his conviction and supervision status. This violation alone supports revocation of his SSOSA.  RCW 9.94A.670(11)(a).

Booth argues that the community custody condition requiring him to abide by geographical boundaries as established by the CCO is unconstitutionally vague because it relied on the unconstitutional prohibition against frequenting areas where children congregate.  As correctly acknowledged by both the State and the trial court, the community custody condition prohibiting Booth from frequenting areas where children congregate is unconstitutionally vague absent an illustrative list.  See State v. Wallmuller, 194 Wn.2d 234, 243-44, 449 P.3d 619 (2019).  Therefore, the court properly determined that this provision could not support a violation.

However, recent case law has held that a community custody condition requiring a defendant to abide by geographic limitations as imposed by a CCO is not unconstitutionally vague.  State v. Lundstrom, 34 Wn. App. 2d 977, 981, 572 P.3d 1243 (2025).  RCW 9.94A.704(2)(a) requires DOC to assess the offender's risk of reoffense and modify conditions of community custody based on the risk to community safety, including prescribed geographical boundaries.  The CCO-imposed geographical limitation must be reasonably related to the crime of conviction, the risk of reoffending, or community safety, and a defendant may request administrative review of the

condition. Lundstrom, 34 Wn. App. 2d at 981; RCW 9.94A.704. These "sufficiently ascertainable standards protect against arbitrary enforcement." Lundstrom, 34 Wn. App. 2d at 981.

As applied to Booth, the geographical restriction was ascertainable and not arbitrary. The CCO imposed the restriction on visits to the farmers market and parks due to the presence of families and minors and the restriction was reasonably related to the child molestation convictions, Booth's risk of reoffending, and community safety. Moreover, the CCO directly communicated the geographical restriction—twice—in response to a specific request from Booth. Both times, the CCO ascertained that Booth understood the prohibition. Therefore, the facts establish that Booth was aware of and understood the explicit prohibition on visiting the Olympia Farmers Market and city parks. The condition was not vague.

Booth contends that he did not "frequent" any parks but spent many days in downtown Olympia near the parks without issue. He also claims that the park he was accused of frequenting was not open the weekend he visited. Additionally, Booth notes that he successfully completed treatment and "there has never even been so much as one issue or complaint in over 20 years."

Despite these claims, the State introduced sufficient evidence to establish Booth's violation of conditions of his suspended sentence. His treatment history and previous actions do not negate the current violations. Booth knew of the specific geographical restriction and the community custody condition that he comply with DOC rules. Booth also knew of the requirement that he inform his employer of his conviction

and supervision status.  He violated these conditions.  Thus, the trial court's decision to revoke his SSOSA was not an abuse of discretion.

Affirmed.

Mann, J.

WE CONCUR:

Bui, J.

Chung, J.