# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

STATE OF WASHINGTON,

                  Respondent,

v.

CHRISTOPHER A. MILLER,

                  Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)

No. 68826-0-I

ORDER DENYING
APPELLANT'S MOTION
FOR RECONSIDERATION
AND WITHDRAWING
OPINION

Appellant Christopher Miller moved for reconsideration of the opinion filed in this case on December 16, 2013. The panel hearing the case called for an answer from the State. The court considered the motion and answer, together with the records and files, and has determined that the motion for reconsideration should be denied. The court also determined that the opinion should be withdrawn and a new opinion filed. The court hereby

ORDERS that the motion for reconsideration is denied and the opinion in the above captioned case filed on December 16, 2013 is withdrawn.

Dated this 31st day of March 2014.

FOR THE PANEL:

Cox, J.

_____
Judge

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68826-0-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTOPHER A. MILLER, | ) | PUBLISHED |
| | ) | |
| Appellant. | ) | FILED: March 31, 2014 |
| | ) | |

Cox, J. — Christopher Miller appeals the revocation of the special sex offender sentencing alternative (SSOSA) of his suspended sentence. The trial court revoked this SSOSA because Miller failed to commence sexual deviancy treatment within 90 days of his release from confinement, as required by his sentence. Miller claims this revocation violated his due process and equal protection rights. Because the trial court did not abuse its discretion in revoking this SSOA, we affirm.

In 2010, Miller pleaded guilty to one count of first degree rape of a child. As a first-time offender, he submitted to a forensic psychological evaluation to determine his suitability for a SSOSA.

In 2011, without objection from the State, the sentencing court granted Miller a SSOSA and ordered 12 months of confinement with 93 months to life suspended. One of the SSOSA conditions was that Miller commence sexual deviancy treatment "within 90 days from the Defendant's release from jail." When the trial court granted the SSOSA, it made clear that Miller was responsible for paying for this treatment.

In January 2012, Miller was released from jail. Approximately a week later, the State informed the court that he did not have a stable residence. Miller told his correctional officer that he thought that he was going to be able to live with his father. But the mobile home park that his father lived in would not accept him as a resident. The trial court found no violation of any SSOSA condition at that point, but it ordered Miller to check in daily with his correctional officer.

A month later, the State moved to revoke Miller's SSOSA. Miller's correctional officer reported that Miller checked in with her daily and had applied for benefits. But she also testified that Miller continued to not have a stable residence and that he did not have enough money to pay for sexual deviancy treatment. The trial court granted Miller 30 days to show compliance with the SSOSA condition for treatment.

The State renewed its motion to revoke the SSOSA. In May 2012, the trial court heard testimony from Miller, his correctional officer, and the jail transition coordinator. At the end of the hearing, the trial court gave its oral ruling. It revoked Miller's SSOSA and imposed 93 months of confinement because he was not then in sexual deviancy treatment, as the sentence required.

The trial court later entered its written findings of fact and conclusions of law. The trial court found that Miller did not have the financial resources to commence treatment at the mandated level. It also found that he would not have the resources to commence treatment within a reasonable amount of time.

The court did not make any determination whether the failure to comply with the sentencing condition was willful.

Miller appeals.

## REVOCATION OF SSOSA

Miller argues that the trial court abused its discretion in revoking his SSOSA, violating his rights to due process and equal protection. We disagree.

"A SSOSA sentence may be revoked at any time if there is sufficient proof to reasonably satisfy the court that the offender has violated a condition of the suspended sentence or failed to make satisfactory progress in treatment."[1]

"Revocation of a suspended sentence due to violations rests within the discretion of the trial court and will not be disturbed absent an abuse of discretion."[2] "An abuse of discretion occurs only when the decision of the court is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'"[3]

Under the Sentencing Reform Act of 1981, chapter 9.94A RCW, a first-time sex offender may be eligible for a suspended sentence under the SSOSA provisions.[4] "SSOSA was created because it was believed that for certain first-time sexual offenders, 'requiring participation in rehabilitation programs is likely to prove effective in preventing future criminality.'"[5]

---

[1] State v. McCormick, 166 Wn.2d 689, 705, 213 P.3d 32 (2009).

[2] Id. at 705-06.

[3] Id. at 706 (quoting State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

[4] RCW 9.94A.670(2).

[5] State v. Goss, 56 Wn. App. 541, 544, 784 P.2d 194 (1990) (quoting D. BOERNER, SENTENCING IN WASHINGTON § 2.5(c) (1985)).

Under RCW 9.94A.670(11), "The court may revoke the suspended sentence at any time during the period of community custody and order execution of the sentence if: (a) The offender violates the conditions of the suspended sentence, or (b) the court finds that the offender is failing to make satisfactory progress in treatment." As the supreme court has noted, the plain language of this provision does not require that a trial court find that a violation of either of the above conditions was willful in order to revoke the suspended sentence.[6]

Nonetheless, the United States Supreme Court has recognized "substantive"[7] protections when an offender's probation is revoked because he or she failed to pay imposed fines or restitution.[8]

In Bearden v. Georgia, the State charged Danny Bearden with felonies of burglary and theft.[9] Georgia's trial court sentenced him to three years of probation for the burglary charge and a concurrent year of probation for the theft charge.[10] One of the conditions to his probation was that he pay a $500 fine and

---

[6] McCormick, 166 Wn.2d at 697-98 (citing former RCW 9.94A.120(8)(a)(vi), which contains identical language to RCW 9.94A.670(11)).

[7] See Black v. Romano, 471 U.S. 606, 611, 105 S. Ct. 2254, 85 L. Ed. 2d 636 (1985) (citing Bearden v. Georgia, 461 U.S. 660, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983)) (explaining that the Bearden court "recognized substantive limits on the automatic revocation of probation where an indigent defendant is unable to pay a fine or restitution").

[8] McCormick, 166 Wn.2d at 700 (citing Bearden, 461 U.S. at 666).

[9] 461 U.S. 660, 662, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983).

[10] Id.

$250 in restitution.[11] Bearden borrowed some money from his parents to partially pay these obligations, but he was laid off from his job before he could pay the remaining balance.[12] The record showed that Bearden, who had "only a ninth grade education and [could not] read, tried repeatedly to find other work but was unable to do so."[13] The trial court revoked his probation because he failed to pay the full amount he owed.[14]

The Court began with acknowledging that it has "long been sensitive to the treatment of indigents in our criminal justice system."[15] The Bearden Court explained that the question presented was "whether a sentencing court can revoke a defendant's probation for failure to pay the imposed fine and restitution, absent evidence and findings that the defendant was somehow responsible for the failure or that alternative forms of punishment were inadequate."[16]

In its analysis of this issue, the Court explained that due process and equal protection principles "converge."[17] In determining what protections should be afforded to an offender when the State seeks to revoke his or her probation based on a failure to pay an imposed fine or restitution, the Court engaged in "a

---

[11] Id.

[12] Id. at 662-63.

[13] Id.

[14] Id. at 663.

[15] Id. at 664.

[16] Id. at 665.

[17] Id.

careful inquiry into such factors as 'the nature of the individual interest affected, the extent to which it is affected, the rationality of the connection between legislative means and purpose, [and] the existence of alternative means for effectuating the purpose . . . .'"[18]

After examining the interests of <u>Bearden</u> and the State, the Court held that due process and equal protection principles require that a trial court "inquire into the reasons" why a probationer has failed to pay fines or restitution.[19]

> If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternative measures of punishment other than imprisonment. Only if alternative measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.[20]

The Court reversed the judgment and remanded so that the lower courts could determine if Bearden had made "sufficient bona fide efforts to pay."[21] And

---

[18] Id. at 666-67 (alterations in original) (quoting <u>Williams v. Illinois</u>, 399 U.S. 235, 260, 90 S. Ct. 2018, 26 L. Ed. 2d 586 (1970)).

[19] Id. at 672.

[20] Id. at 672-73.

[21] Id. at 674.

if so, whether an "alternate punishment" or an "alternate measure" was available and was "adequate to meet the State's interest in punishment and deterrence."[22]

In State v. McCormick, our supreme court explained the limitations to the holding in Bearden.[23] Our supreme court explained, "The Bearden Court did not address whether a finding of willfulness was required in other settings and, if anything, it indicated a finding of willfulness would not be required if the condition is a threat to the safety or welfare of society."[24]

There, a SSOSA condition was at issue. Specifically, the condition prohibited McCormick, who was convicted of first degree rape of a child, from "'frequent[ing] areas where minor children are known to congregate, as defined by the supervising Community Corrections Officer.'"[25] The trial court found that McCormick violated this condition when he went to a food bank located on a school's property.[26]

McCormick argued that the "due process clauses of the state and federal constitutions require the State to prove a willful violation of community custody conditions before revoking a suspended sentence."[27] The supreme court disagreed.

---

[22] Id.

[23] 166 Wn.2d 689, 701, 213 P.3d 32 (2009).

[24] Id.

[25] Id. at 693.

[26] Id. at 696.

[27] Id. at 699.

The court "conduct[ed] a careful inquiry" into the factors that <u>Bearden</u> identified.[28] As noted above, these factors included "the nature of the individual interest affected, the extent to which it is affected, the rationality of the connection between the legislative means and purposes, and the existence of alternative means for effectuating the purpose."[29] After conducting this inquiry, the court concluded:

> Given the State's strong interest in protecting the public, McCormick's diminished interest because of his status as a convicted sex offender serving a SSOSA sentence, and that McCormick's proposed scenario leads to dangerous situations where McCormick can frequent places where minors are known to congregate, due process does not require the State to prove that McCormick willfully violated the condition.[30]

Unlike <u>Bearden</u>, the trial court in <u>McCormick</u> did not have to "inquire into the reasons" why McCormick violated the condition.[31] The court based this conclusion on the fact that the violation of this condition was a "threat to the safety or welfare of society."[32]

Here, the SSOSA condition at issue is both similar to and different from the conditions in <u>McCormick</u> and <u>Bearden</u>. As noted above, one of Miller's SSOSA conditions required that he commence sexual deviancy treatment "within

---

[28] <u>Id.</u> at 701-02 (citing <u>Bearden</u>, 461 U.S. at 666-67).

[29] <u>Id.</u> (citing <u>Bearden</u>, 461 U.S. at 666-67).

[30] <u>Id.</u> at 703.

[31] <u>Compare id.</u> at 705, <u>with Bearden</u>, 461 U.S. at 672.

[32] <u>McCormick</u>, 166 Wn.2d at 701, 706.

90 days from the defendant's release from jail." Additionally, Miller was ultimately responsible for paying for this treatment.

Like McCormick, a violation of Miller's condition is a threat to the safety and welfare of society. Sexual deviancy treatment will help ensure that Miller will not reoffend, and the ability to participate in treatment and rehabilitate is the purpose of granting a SSOSA.[33] But, unlike McCormick, Miller's condition involves a financial burden.

In contrast, Miller's condition is like the condition in Bearden because that condition involved a financial burden—payment of fines and restitution. But, unlike Bearden, Miller's condition related to the safety and welfare of society.

Thus, the issue is whether the trial court properly exercised its discretion when it revoked Miller's SSOSA for failing to participate in sexual deviancy treatment, which he had to pay for, without considering whether the violation was willful.

As noted above, whether a finding of willfulness is required begins with a "careful inquiry" into the interests affected.[34] Here, we consider Miller's and the State's interests respectively.

Miller has an interest in being "punished only when he acted willfully in violating the terms of his probation" like the probationer in McCormick.[35] As the McCormick court explained, this "interest comes from the idea that a person is

---

[33] See Goss, 56 Wn. App. at 544.

[34] McCormick, 166 Wn.2d at 701-02 (citing Bearden, 461 U.S. at 666-67).

[35] Id. at 702.

punished only for the acts within his or her control."[36] "That interest is affected if the State does not have to prove McCormick acted willfully."[37]

Additionally, Miller argues that he has a significant interest in remaining on probation.[38] Specifically, he argues that under Bearden, he has an interest in not having his SSOSA revoked because of his "involuntary indigency."[39] He contends that revoking his SSOSA based on his inability to pay for treatment is "'punishing a person for his poverty.'"[40]

The State has "'an important interest in protecting society, particularly minors, from a person convicted of raping a child,'" as the McCormick court also recognized.[41] "That interest is rationally served by imposing stringent conditions related to the crime" that Miller committed."[42] Here, the condition that required Miller to participate in sexual deviancy treatment serves as a way to prevent Miller from reoffending.[43] But requiring Miller to pay for the treatment when he cannot afford it does not necessarily serve this purpose.

---

[36] Id.

[37] Id.

[38] Brief of Appellant at 25 (citing Bearden, 461 U.S. at 671).

[39] Id. at 23-26.

[40] Id. at 25 (quoting Bearden, 461 U.S. at 671).

[41] Brief of Respondent at 11 (quoting McCormick, 166 Wn.2d at 702).

[42] McCormick, 166 Wn.2d at 702.

[43] See id.

Because Miller's ability to pay for the treatment determines if he can fulfill the SSOSA condition, the rule announced in Bearden controls here: "[I]f the probationer has made all reasonable efforts to pay [for treatment], and yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available."[44] "This lack of fault provides a 'substantial reaso[n] which justifie[s] or mitigate[s] the violation and [could] make[] revocation inappropriate."[45] Our task, then, is to determine whether the trial court in this case fulfilled its obligation under this rule.

Here, the trial court inquired into the reasons why Miller was not in treatment and why he could not pay for treatment. The court appeared to acknowledge that Miller was willing to undergo treatment but was unable to pay for it. It stated, "[I]t is regrettable that people find themselves in positions such as Mr. Miller where they lack financial assistance or the financial means to get into treatment."[46] In its written findings, the trial court stated:

> The defendant has dismal prospects for employment. It is likely the only way the defendant would ever be able to pay for sexual deviancy treatment would be with public assistance. It is unknown if the defendant would be eligible for benefits (SSI) which could potentially pay for treatment. In any case, the earliest the defendant would receive benefits from SSI would be 12 months after release from jail.[47]

---

[44] Bearden, 461 U.S. at 668-69.

[45] Id. at 669 (some alterations in original).

[46] Report of Proceedings II (May 8, 2012) at 11.

[47] Clerk's Papers at 7.

11

The trial court acknowledged that Miller tried to find employment but was unable to do so. The court further explained that Miller's family members initially led the court to believe they could help pay for treatment but that was no longer the case. As Bearden requires, the trial court impliedly acknowledged that Miller made bona fide efforts to pay for treatment but was unable to do so.

The trial court then properly considered whether there were alternative forms of punishment other than incarceration.[48] It noted in its oral ruling that Miller was receiving free mental health treatment, but it would not replace the sexual deviancy treatment. In its written findings, the trial court found that the fact that Miller was not in sexual deviancy treatment increased the risk that Miller would reoffend. Consequently, this mental health treatment was not an adequate alternative measure to meet the State's interest in punishment and deterrence.[49]

Because Miller was not receiving sexual deviancy treatment for which he had to pay and there were no adequate alternative measures, the trial court did not abuse its discretion when it revoked Miller's SSOSA. Although the trial court needed to inquire into the reasons why Miller was not participating in treatment that he had to pay for, the court did not need to find that Miller's failure was willful in order to revoke the SSOSA.

Miller argues that the court's finding that "if Mr. Miller remained in the community without sexual deviancy treatment, Mr. Miller posed a 'significant risk

---

[48] See Bearden, 461 U.S. at 672.

[49] Id. at 672-73.

to re-offend' . . . was not supported by substantial evidence."[50] But this argument is not supported by the record.

This court reviews findings of fact for substantial evidence.[51] Substantial evidence is "evidence sufficient to persuade a fair-minded, rational person of the truth of the declared premise."[52]

Here, the Report of Forensic Psychological Evaluation, which was before the trial court, stated that Miller's "long-term risk of sexual recidivism falls in the low-moderate range."[53] Specifically, "On an actuarial basis, persons with history similar to Mr. Miller's have a probability of sexual reoffending of .09 over 5 years, .13 over 10 years, and .16 over 15 years."[54] It recommended that Miller enter into sexual deviancy treatment for a period not less than three years. The report explained that "[t]reatment objectives should include relapse prevention."[55]

Given this report, substantial evidence supports the trial court's finding that Miller was at risk for reoffending if he was not in sexual deviancy treatment. Miller's arguments to the contrary are not persuasive.

---

[50] Brief of Appellant at 30.

[51] Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003).

[52] Price v. Kitsap Transit, 125 Wn.2d 456, 464, 886 P.2d 556 (1994).

[53] Clerk's Papers at 105.

[54] Id.

[55] Id. at 106.

Miller also makes separate due process and equal protection arguments in his opening brief. But, as discussed above, the Supreme Court has explained that due process and equal protection principles converge for this type of issue.[56] Thus, there is no separate evaluation of these constitutional provisions for purposes of this issue.

Miller purports to challenge the constitutionality of RCW 9.94A.670. He offers no authority or argument supporting any challenge beyond the constitutional issues that are fully addressed in this opinion. Accordingly, we do not further address this challenge.

In sum, even though the trial court did not explicitly apply the rule in Bearden, it followed the principles of that case. The court inquired into the reasons why Miller was not in sexual deviancy treatment and why he could not pay for this treatment. Because there were no adequate alternative measures, the court properly exercised its discretion in revoking the SSOSA in this case.

We affirm the orders revoking the SSOSA.

Cox, J.

WE CONCUR:

---

[56] See Bearden, 461 U.S. at 665.