IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76028-9-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| RICHARD ARNOLD LANE, | ) | |
| | ) | |
| Appellant. | ) | FILED: January 17, 2017 |

SCHINDLER, J. — Richard Arnold Lane challenges revocation of his special sex offender sentencing alternative (SSOSA) suspended sentence. Lane asserts substantial evidence does not support revocation of the suspended sentence. Because there is no dispute Lane repeatedly violated the mandatory SSOSA conditions and substantial evidence supports the decision to revoke the suspended sentence, we affirm.

Lane pleaded guilty to one count of child molestation in the first degree in violation of RCW 9A.44.083 and two counts of witness tampering in violation of RCW 9A.72.120(1)(a). The State agreed to recommend a SSOSA suspended sentence under RCW 9.94A.670 subject to the requirements and conditions in "Appendix C – Recommendation of State - Statement of Defendant on Plea of Guilty." Lane agreed to obtain a sexual deviancy evaluation from a treatment provider and "attend and make

successful progress in sexual deviancy treatment." Lane agreed to comply with a number of other conditions.[1]

At the sentencing hearing on February 12, 2010, the court agreed to follow the recommendation to impose a SSOSA. The court imposed a suspended sentence of 82 months to life for child molestation in the first degree on the condition that Lane serve 6 months in confinement for two counts of witness tampering and comply with a number of mandatory conditions. The judgment and sentence states, in pertinent part:

> **(a) MANDATORY CONDITIONS:** Defendant shall comply with the following conditions during the term of Community Placement/Custody:
>
> . . . .
> (3) Do not consume alcohol and/or controlled substances except pursuant to lawfully issued prescriptions;
> (4) Do not unlawfully possess controlled substances;
> . . . .
> (6) Receive prior approval for living arrangements and residence location;
> . . . .
> (9) Remain within geographic boundary, as set forth in writing by the Community Corrections Officer.
> . . . .

---

[1] The State's recommendation lists the following pertinent conditions:

The defendant shall attend and make successful progress in sexual deviancy treatment and shall be subject to these conditions:

    . . . . The defendant shall submit to polygraphs . . . as requested by the treatment provider or [community corrections officer] (quarterly at a minimum);

    . . . .

    . . . . The defendant shall not have any contact with the victim(s) or any member of the victim's family, either direct or indirect, or any minor child without prior written authorization from the treatment provider and community corrections officer; then said contact shall be in the presence of a pre-approved adult supervisor;

    . . . .

    . . . . The defendant . . . shall not consume any alcohol, and shall not possess or use any controlled substance without a valid prescription;

    . . . . The defendant shall abide by any other conditions as placed on him by the community corrections officer or treatment provider.

**(b) OTHER CONDITIONS:** Defendant shall comply with the following other conditions during the term of community placement / custody:

10. Reside at a residence and under living arrangements approved of in advance by your Community Corrections Officer. You shall not change your residence without first obtaining the authorization of you [sic] Community Corrections Officer.
11. Obtain a Psychosexual Evaluation and comply with any recommended treatment by a State-Certified Sexual Deviancy Counselor. You are to sign all necessary releases to insure your Community Corrections Officer will be able to monitor your progress in treatment.

. . . .

15. Hold no position of authority or trust involving children under the age of 18.
16. Do not initiate or prolong physical contact with children under the age of 18 for any reason.

. . . .

18. Submit to polygraph . . . testing as deemed appropriate upon direction of your Community Corrections Officer and/or therapist at your expense.

. . . .

22. Follow all conditions imposed by your Sexual Deviancy Treatment Provider.

. . . .

25. No contact with any minors without prior approval of the [Department of Corrections]/[Community Corrections Officer] and Sexual Deviancy Treatment Provider.

. . . .

28. Regular [urinalyses].[2]

The judgment and sentence states the court "may revoke the suspended sentence at any time" if the defendant "violates the conditions of the suspended sentence or the court finds that the defendant is failing to make satisfactory progress in treatment."

**REVOCATION OF SUSPENDED SENTENCE.** The court may revoke the suspended sentence at any time during the period of community custody and order execution of the sentence, with credit for any confinement served during the period of community custody, if the defendant violates the conditions of the suspended sentence or the court finds that the

---

[2] Boldface in original.

3

defendant is failing to make satisfactory progress in treatment. RCW 9.94A.670.[3]

On February 18, 2010, Lane signed a "Sex Offender Treatment Program Therapy Contract" agreeing to a number of conditions. The contract states, in pertinent part:

> The following conditions define more carefully our requirements of clients in sex offender treatment:
>
> 1. Clients agree to disclose completely and honestly the nature of their sexual history and behavior; clients also agree to assume full responsibility for their offenses and behavior. However, honest self-disclosure will not protect a client from the consequences of his behavior, especially in the case of a new sexual offense, probation violation, or violation of the terms of this contract.
>
> . . . .
>
> 3. Clients are prohibited from supervised or unsupervised contact with minors, including family members, unless otherwise agreed to by the treatment group and primary clinician. Any person seeking to supervise a client's contact with minors must be approved by treatment staff in advance of the client's first contact with the minor(s). . . .
>
> . . . .
>
> 13. Clients will not use alcohol or other controlled substances of any type during the time they participate in treatment. Any such usage, inside or outside of group, represents a violation of this contract. . . .
>
> . . . .
>
> 17. Polygraph assessment, for purposes of determining treatment compliance, is mandatory. The first such assessment will occur within the amenability to treatment period. Subsequent assessments will be scheduled at the discretion of the treating clinician and / or probation officer.[4]

On March 1, 2010, Lane signed and acknowledged receipt of the Department of Corrections (DOC) "Standard Conditions, and Requirements" form. The form "includes

---

[3] Boldface in original.

[4] Emphasis in original.

the standard condition that Mr. Lane obtain written permission before he travels outside the county in which he resides."

On March 21, 2012, DOC filed a notice of violation alleging Lane violated the conditions of his SSOSA by having contact with a minor. The court held a hearing on the violation. Lane stipulated that he violated the conditions of the SSOSA by having "contact with a minor" on March 2, 2012 and by lying to his community corrections officer (CCO) and sex offender treatment provider about contact with the minor. The court entered an order finding Lane violated the conditions of the SSOSA and imposing 105 days in jail.

On February 11, 2015, Lane tested positive for methamphetamine. The polygraph examination on February 18 indicated his denial of the use of methamphetamine was "deceptive."

The State filed a petition to revoke the SSOSA suspended sentence. The court held a hearing over the course of several days. The court found that Lane violated the conditions of the SSOSA but denied the petition to revoke the SSOSA suspended sentence. The court ordered Lane to serve 120 days in jail. The order states Lane has " 'absolutely zero margin for error.' "

Lane was released from jail on June 18, 2015. On August 11, CCO Gregory Devorss learned Lane went to the Red Wing Casino in Thurston County the previous weekend. Officer Devorss had not given Lane permission to leave Pierce County. Lane denied leaving Peirce County. In response to the question of "when the last time it was he went to the Red Wing Casino," Lane told Devorss he went to the casino "about eight months ago" when Devorss "gave him a travel pass to take his mother there."

Devorss scheduled a polygraph examination of Lane. On August 13, the polygraph examiner asked Lane, "Have you left [the] county without permission since last test?" In response, Lane admitted he "had gone to the Red Wing Casino" on Saturday, August 8. Lane emphatically denied using " 'illegal drugs since last test.' " The polygraph examiner concluded his response was "[n]ot [t]ruthful."

The next day, Devorss went to Lane's residence. When Devorss entered the living room, he saw "a young . . . child in a feeding high chair." Lane's stepfather told Devorss he babysat his grandchild several times per week. Devorss told Lane's mother and stepfather that Lane "had never spoken to me of getting approval for a child to be at his residence and that it was highly irregular and a serious matter that needed pre-approval prior to it happening."

Devorss scheduled another polygraph examination for September 1. The polygraph examiner asked Lane, "Have you used any illegal drug since your release from jail in June 2015?" And, "Have you used any methamphetamine since your release from jail in June 2015?" Lane responded "no" to both questions. The polygraph examiner concluded, "Mr. Lane did not answer truthfully to the questions."

On September 8, Devorss issued a notice of violation alleging Lane violated the SSOSA conditions by leaving Pierce County without permission and failing to make satisfactory progress in sexual deviancy treatment before September 1, 2015.

**Violation 1**: Leaving Pierce County without permission on or about 8/8/15.

**Violation 2**: Failing to make satisfactory progress in sexual deviancy treatment since on or before 9/1/15.

Devorss recommended the court "[r]evoke the suspended sentence." The State filed a petition to revoke the SSOSA suspended sentence.

The court held a hearing on the petition to revoke the SSOSA on October 22. Lane stipulated that he left Pierce County without permission on August 8, 2015 but denied failing to make satisfactory progress in treatment before September 1.

Devorss and sex offender treatment provider Dr. Paula van Pul testified at the hearing. The court admitted into evidence a number of exhibits including Lane's Sex Offender Treatment Program Therapy Contract, the polygraph reports for August 13 and September 1, a September 9 progress report from Dr. van Pul, and the September 8 notice of violation describing the previous and current SSOSA violations.

Devorss testified it was "not feasible" to supervise Lane because Lane was not truthful.

Q How feasible is it that you can adequately supervise Mr. Lane as a sex offender when he is not forthcoming with you about issues of leaving the county, whether he left the county without your permission?

A It's not feasible. It severely undermines our ability to adequately monitor Mr. Lane and be confident that his risk is not a threat to the community.

Dr. van Pul testified Lane's "progress in treatment" on a scale of 1 to 10 was "probably about" a 7. Dr. van Pul stated there were five sections in the "relapse prevention plan" and Lane was "on Section D." But Dr. van Pul admitted it was important for Lane to be honest and transparent with both his CCO and his sex offender treatment provider. Dr. van Pul said Lane's lack of honesty was a concern.

Q But you are aware that he was not open and honest with Mr. Devorss when he was asked whether or not he went to a casino out of county?

A Absolutely.

Q    And is that — as his treatment provider, is that of concern to you?
A    He admitted that in group, yes.
Q    Is it of concern to you that he is this far along in treatment and he was not being — he was not being transparent, excuse me, with his CCO on that question?
A    Yes.

The court found Lane violated the conditions of his SSOSA by leaving the county without permission. The court revoked the SSOSA suspended sentence because of his "pattern of deception." The court ruled, in pertinent part:

> One of the core issues that I have in this case is that we are where we are because of deception, and that's how we got here. That's how we got to the first violation. That's definitely how we got to the violation in February, and I came this close to revoking at that time . . . .
> And so, in this case, he wasn't forthcoming about being out of county. He was actually caught. He was confronted, and he still was not forthcoming until he actually went in for the polygraph, and then he said, "I better tell the polygrapher that I lied to my CCO." And I really believe that's because he got caught.
> . . . .
> But what I am more focused on in this case is this pattern of deception. The child in the house wasn't something that was, again, forthcoming. Was that the issue, the violation? There is no indication that he was actually physically around the child. But again, the CCO had to find it out, and I think that amenability to treatment is many things . . . .
> But I think the ability to be in SSOSA isn't just about the success of group, but it's about a person's total willingness to be honest in every step and to be forthcoming and to be proactive and to not put themselves in situations where they are having to lie to their CCO, and they are having deception detected on a polygraph.
> . . . I am very concerned about deception not once but twice on the very issue that was in front of the Court just three months earlier or four or five months earlier, earlier this year, which is the use of methamphetamine.
> Obviously, polygraphs are not infallible and we are dealing with someone that has an anxiety issue. That may in fact account for the deception. But the problem is, we are left in a position where we don't trust. And Mr. Devorss understandably does not trust Mr. Lane.
> And under all of these circumstances — first of all, I find the first violation. It was stipulated to. He did not get permission. But it isn't the not getting permission and the fact that the Red Wind Casino is slightly over the county line, it's the fact he lied about it when confronted. That's the issue for the Court.

And it's that pattern of deception, which I saw in February and I saw again now that I think makes him inappropriate to continue in a SSOSA, and I will grant the State's petition to revoke.

The order revoking the SSOSA suspended sentence states, in pertinent part:

The court heard testimony from witnesses & heard oral arguments from part[ies] and found the following violations (1) leaving Pierce County without permission on or about 8/8/15 (defendant stipulated to this) & (2) failed to make satisfactory progress in sexual deviancy treatment since on or before 9/1/15; the court revoked [because] the defendant is not deemed amenable to treatment due to his ongoing history of being dishonest with his CCO.

Lane appeals the decision to revoke his SSOSA suspended sentence. Lane asserts substantial evidence does not support finding he failed to make satisfactory progress in treatment before September 1, 2015.

Revocation of a suspended sentence rests within the discretion of the trial court and will not be disturbed absent an abuse of discretion. State v. McCormick, 166 Wn.2d 689, 705-06, 213 P.3d 32 (2009); State v. Miller, 180 Wn. App. 413, 416-17, 325 P.3d 230 (2014). "An abuse of discretion occurs only when the decision of the court is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.' " McCormick, 166 Wn.2d at 706 (quoting State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). We review the trial court's findings of fact for substantial evidence. Miller, 180 Wn. App. at 425. Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise. Miller, 180 Wn. App. at 425.

The trial court may revoke a SSOSA sentence "at any time if there is sufficient proof to reasonably satisfy the court that the offender has violated a condition of the suspended sentence or failed to make satisfactory progress in treatment." McCormick,

166 Wn.2d at 705; Miller, 180 Wn. App. at 416; State v. Ramirez, 140 Wn. App. 278, 290, 165 P.3d 61 (2007). RCW 9.94A.670(11) states, in pertinent part:

> The court may revoke the suspended sentence at any time during the period of community custody and order execution of the sentence if: (a) The offender violates the conditions of the suspended sentence, or (b) the court finds that the offender is failing to make satisfactory progress in treatment.

The record supports the court's decision to revoke the SSOSA suspended sentence because Lane "is not deemed amenable to treatment due to his ongoing history of being dishonest with his CCO."

There is no dispute that Lane repeatedly violated the mandatory conditions of his suspended sentence. Although Dr. van Pul stated Lane was "making good progress" in the treatment program, the record shows Lane repeatedly violated the conditions of the sex offender treatment program and the judgment and sentence.

The mandatory conditions prohibit "contact with minors, including family members, unless otherwise agreed to by the treatment group and primary clinician." But Lane had contact with a minor on March 2, 2012 and lied to the CCO and treatment provider about contact with the minor. The mandatory conditions also prohibit the use of "alcohol or other controlled substances of any type." Lane tested positive for methamphetamine in February 2015 and lied in August and September 2015 about using illegal drugs.

Further, Dr. van Pul testified that the "number one reason" individuals do not successfully complete a sexual deviancy treatment program "is that people aren't truthful, and they don't follow the rules." Dr. van Pul stated that "being open, honest and

transparent with both the treatment provider and the CCO is a very important aspect of treatment."

Q   And as his treatment provider, is it important to you as a provider in assessing if someone is amenable whether or not the client is complying and adhering to their CCO's condition?
A   I believe a client being open, honest and transparent with both the treatment provider and the CCO is a very important aspect of treatment in the ability to monitor somebody in the community. I don't disagree with that.
Q   And if I heard you correctly, you said just being open, honest, transparent is not only required with you, the treatment provider, but with the CCO, as well?
A   I believe any time there is a supervisor, those three qualities are important.

Substantial evidence supports finding Lane was not amenable to treatment because of "his ongoing history of being dishonest." Because the court did not abuse its discretion in revoking the SSOSA suspended sentence, we affirm.[5]

WE CONCUR:

_____

_____

_____

---

[5] After consideration of the nonexclusive factors in State v. Sinclair, 192 Wn. App. 380, 391, 367 P.3d 612 (2016), we waive the imposition of appellate costs.