## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | DIVISION ONE |
| Respondent, | ) | |
| | ) | No. 74828-9-I |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| LONZO M. WILSON, | ) | |
| | ) | |
| Appellant. | ) | FILED: June 5, 2017 |
| | ) | |

DWYER, J. — Lonzo Wilson appeals from a trial court's order revoking his suspended sentence entered as a special sex offender sentencing alternative. On appeal, Wilson contends that the trial court abused its discretion by failing to consider alternatives to revocation. Finding no error, we affirm.

I

In May 2002, Lonzo Wilson pled guilty to rape of a child in the second degree. The sentencing court imposed a standard-range sentence of 102 months of incarceration but suspended the incarceration as a special sex offender sentencing alternative (SSOSA). A lifetime of community custody was also imposed. Wilson was ordered to undergo and complete three years of sexual offender treatment and have no unsupervised contact with any minors.

Wilson was consistently noncompliant. Sixteen sentencing modification hearings were held between 2002 and 2009. In several of these hearings, the court determined that Wilson was out of compliance with the terms and

conditions of his sentence—either by failing to pay legal financial obligations or by failing to complete treatment. Wilson stopped engaging in treatment entirely by April 2009.

On October 12, 2012, the Department of Corrections discovered that Wilson had fathered two children and had been having direct contact with these children since 2005. Wilson had been concealing his relationship with the mother of his children from his treatment provider and from the Department. Nevertheless, the State recommended that Wilson be given one last chance to comply with the terms and conditions of his suspended sentence. Wilson was ordered to serve 180 days of confinement and was again ordered to complete the mandated sex offender treatment.

Wilson failed to report to the Department as required in January 2015. In February 2015, he tested positive for methamphetamine. Wilson admitted to both violations but claimed that neither violation was willful. Again, the court declined to revoke the SSOSA. Instead, Wilson was ordered to serve a short period of confinement and was ordered to complete treatment within the following six months. The court warned Wilson that, had there been any additional connection between the use of methamphetamine and his contact with children, the court would have revoked the SSOSA sentence.

In May 2015, Wilson again tested positive for methamphetamine. Wilson also admitted to having unapproved contact with his minor children during February and May 2015. In light of Wilson's repeated failure to comply with the terms and conditions of his suspended sentence, the State asked that Wilson's

SSOSA be revoked. Thirteen years after Wilson's guilty plea, the trial court granted the motion. Wilson appeals.

II

Wilson contends that the trial court abused its discretion by revoking his suspended sentence. This is so, he asserts, because the trial court failed to consider alternatives to revocation. We disagree.

Pursuant to the SSOSA statute, a sentencing court may suspend the sentence of a first-time sexual offender if the offender is shown to be amenable to treatment. RCW 9.94A.670. "A SSOSA sentence may be revoked at any time where there is sufficient proof to reasonably satisfy the trial court that the defendant has violated a condition of the suspended sentence or has failed to make satisfactory progress in treatment." State v. Miller, 159 Wn. App. 911, 917-18, 247 P.3d 457 (2011) (citing State v. McCormick, 166 Wn.2d 689, 705, 213 P.3d 32 (2009); RCW 9.94A.670(10)). When the offender's violation is a threat to the safety and welfare of society, the sentencing court need not inquire into the reasons for the violation. State v. Miller, 180 Wn. App. 413, 421, 325 P.3d 230 (2014).

We review a trial court's decision to revoke a SSOSA suspended sentence for an abuse of discretion. State v. Partee, 141 Wn. App. 355, 361, 170 P.3d 60 (2007). A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on an untenable ground or for untenable reasons. McCormick, 166 Wn.2d at 706.

Here, the trial court heard testimony from Wilson's treatment provider, Dr. Michael O'Connell. Dr. O'Connell testified that he had been providing treatment services to Wilson since May 2013. Dr. O'Connell testified that Wilson has a history of self-defeating behavior—such as lying to his treatment providers and others who were trying to help him—but that this behavior was likely not a danger to the community. Dr. O'Connell testified that he did not see any present issues of sexual deviancy, sexual preference for minors, or antisociality, which he described as being the major predictors of sexual re-offense. Dr. O'Connell also testified that he would be willing to continue to work with Wilson and that he did not believe that the community would be made safer from sexual predation by sending Wilson to prison.

The trial court disagreed with Dr. O'Connell's assessment that Wilson's use of methamphetamine did not pose a risk to his children or to the community. The trial court found that Wilson had repeatedly used methamphetamine, lied about his relationships, lied about where he was living, and—after more than a dozen years—failed to complete the sex offender treatment that had been repeatedly ordered by the court. The trial court found that Wilson's actions were in violation of the terms and conditions of his suspended sentence. The trial court also noted that Wilson's behavior was especially egregious in light of the fact that Wilson's crime was rape of a child.

The trial court then weighed the competing interests of all those affected. The trial court considered the victim and her family, who had expected Wilson's treatment obligation to be taken seriously and completed. The trial court also

considered Wilson's interests, noting that the court had previously "made perfectly clear" that any further contact with children or further use of drugs would not be tolerated. Reflecting on its clear instructions to Wilson, the trial court pondered that "if the Court were again to do what it did last time, deny the request for revocation, does anyone think we wouldn't be back here?"

The trial court concluded:

> I've previously and I've tried today to consider the alternatives before the Court. I've relied on all the evidence before me, which is the CCO's document and report of allegations, the pleadings of the parties, as well as then the testimony of Dr. O'Connell. And what's changed is we're simply at what I would describe as a – in that balancing, we're at a tipping point.
> The motion for revocation is granted. And the Court takes no joy in the ruling.

The trial court's ruling was tenable. The record establishes that the trial court considered the evidence before it and determined that Wilson's repeated violations of his SSOSA sentence constituted a threat to the safety and welfare of society. The trial court heard and considered the testimony of Dr. O'Connell but simply disagreed with the doctor's view of the situation.

Nevertheless, Wilson contends that the trial court abused its discretion by failing to consider alternatives to revocation. He cites to no authority requiring trial courts to consider alternatives to revocation after making a determination that an offender's violation is a threat to the safety and welfare of society. In any event, the record establishes that the trial court *did* consider alternatives. The trial court had previously given Wilson numerous opportunities to bring his conduct into conformity with the terms and conditions of his suspended sentence. At last, the trial court determined, Wilson's noncompliance had reached "a tipping

point." Full and proper consideration of all necessary factors was engaged in by the trial judge. There was no judicial error. Wilson's present circumstance is entirely of his own creation.

Affirmed.

We concur: