Rush, Chief Justice, dissenting.
Are additional procedural safeguards necessary to ensure that indigent Hoosiers aren't incarcerated for probation violations that result simply from their poverty? Yes-and it's imperative that this Court explicitly establish those protections. Today, however, this Court declines to do so, and I thus respectfully dissent from the denial of transfer.
"[T]o prevent indigent defendants from being imprisoned because of their inability to pay," Garrett v. State , 680 N.E.2d 1, 2 (Ind. Ct. App. 1997), the Indiana General Assembly enacted a statute mandating that "[p]robation may not be revoked for failure to comply with conditions of a sentence that imposes financial obligations on the person unless the person recklessly, knowingly, or intentionally fails to pay," Ind. Code § 35-38-2-3(g) (2018) ; see Pub. L. No. 311, § 3(e), 1983 Ind. Acts 1861, 1877. But this statutory requirement is not the only limit on probation revocation for a person who is unable to pay. See Runyon v. State , 939 N.E.2d 613, 616 (Ind. 2010) (recognizing that "more may be required beyond satisfaction of [Indiana's] statut[e]").
The due process and equal protection guarantees of the Federal Constitution impose their own procedural and substantive limits. See Black v. Romano , 471 U.S. 606, 610, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985). The Supreme Court of the United States held in Bearden v. Georgia that courts may not revoke a defendant's probation for failure to pay a fine or restitution without first making an inquiry into the reason for that failure:
If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternative measures of punishment other than imprisonment. Only if alternative measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay.
*1273 461 U.S. 660, 672, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983). The Bearden Court reasoned that "[t]o do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine." 461 U.S. at 672-73, 103 S.Ct. 2064.
Although Bearden specifically addressed only fines and restitution, its reasoning applies equally to other "conditions of a sentence that imposes financial obligations on the person," I.C. § 35-38-2-3(g). This is because, whether the condition is a fine, restitution, or some other financial obligation, to imprison the probationer simply because he cannot pay "would be contrary to the fundamental fairness required by the Fourteenth Amendment." Bearden , 461 U.S. at 673, 103 S.Ct. 2064 ; see United States v. Parks , 89 F.3d 570, 572-73 (9th Cir. 1996) ; People v. Souffrance , 94 A.D.3d 1024, 942 N.Y.S.2d 180 (N.Y. App. Div. 2012) ; State v. Miller , 180 Wash.App. 413, 325 P.3d 230, 236-37 (2014) ; cf. Whedon v. State , 765 N.E.2d 1276, 1279 (Ind. 2002) ; Henderson v. State , 44 N.E.3d 811, 815 (Ind. Ct. App. 2015).
Thus, when a defendant is too poor to meet a probation condition that imposes a financial obligation, Section 35-38-2-3(g) and Bearden offer protection from revocation. In other words, incarceration is reserved for those who can pay, but won't-not for those who merely can't pay.
But how do we ensure this is faithfully executed in Indiana courts? By implementing simple procedural safeguards. Specifically, before a trial court revokes probation and imposes incarceration for failure to meet a financial obligation, it should be required to enter findings about
(1) the financial resources the court relied on to conclude that nonpayment was willful; or
(2) if the defendant was not at fault for nonpayment, why alternatives to incarceration are inadequate, in the particular case, to meet the State's interests in punishment and deterrence.
These findings align not only with the statutory and constitutional demands described above, but also with a recommendation from a 2017 bench card for judges, produced by The National Task Force on Fines, Fees and Bail Practices. National Center for State Courts, Lawful Collection of Legal Financial Obligations: A Bench Card for Judges (2017), https://www.ncsc.org/~/media/Images/Topics/Fines% 20Fees/BenchCard_FINAL_Feb2_2017.ashx (last visited Jan. 14, 2019). Moreover, as Judge Robb aptly observed, these findings would "protect constitutional principles of fundamental fairness, and significantly aid [appellate] review of such cases." Martin v. State , No. 29A04-1712-CR-2992, 2018 WL 4275412, at *9 n.4 (Ind. Ct. App. Aug. 27, 2018) (unpublished decision) (Robb, J., dissenting). These compelling reasons to implement simple procedural safeguards are further underscored by the facts of this case.
Here, Timothy Martin pleaded guilty to and was convicted of three counts of child molestation. Martin then served nearly fourteen years in the Department of Correction before being released to probation, which included special conditions related to his status as an adult sex offender. Approximately nine months after his release, the State alleged that Martin had failed to provide written verification demonstrating his completion of required evaluations and programs. Martin admitted to the violations, and he was ordered to serve two years of his previously suspended sentence, on work release with Hamilton County Community Corrections.
During his time on Community Corrections, Martin worked at a Wendy's in Noblesville, *1274 Indiana. After the successful completion of his two-year executed sentence on work release, Martin was released and placed back on probation. At the time of his release, Martin owed over $ 3,500 in court fees, had no driver's license,[1] and no longer had a consistent place to sleep each night. He was homeless.
Martin continued his employment with the Wendy's in Noblesville. But without a place to live, in June he moved to Anderson, Indiana, to stay with his sister and her family. Because of the distance and an inability to pay for and secure transportation, he lost his job.
Martin testified he was also therefore unable to pay for and attend four required sex offender counseling sessions that summer. The State then filed a notice of probation violation against Martin. The information alleged, in part, a violation of a condition that required Martin to "attend, actively participate in and successfully complete a court-approved sex offender treatment program." That same condition stated that "[p]rompt payment of any fees is [Martin's] responsibility," and the State claimed that Martin owed over $ 300 for the counseling.
At a fact-finding hearing, Martin admitted to the violations, and the State proffered a factual basis for the admission. The State pointed out, in part, that Martin "was unsuccessfully discharged from sex offender counseling due to noncompliance with attendance and financial obligations" and that "[a]t the time of his discharge he had an outstanding balance in the amount of $ 310." Martin requested to hold off the dispositional hearing for forty-five days so that he could "hopefully get the money and get back into treatment." The trial court granted his request.
At that later dispositional hearing, Martin testified that he had obtained two jobs: full-time employment that would begin that afternoon or the next day, and a part-time job at a local Wendy's where he would likely begin working the following week. Martin further testified that he had found reliable transportation to and from work and his counseling appointments. And he informed the trial court that he would be able to resume counseling in a few weeks "since I will actually have the money to go ahead and pay what my counselor for the [Sex Offender Management and Monitoring] Treatment Program asked me to pay." He explained that he needed to pay $ 60 to get back into classes and "start paying the $ 319 on the back that I owe."
However, the trial court denied Martin's request to remain on probation. It instead ordered him to serve the remaining four years of his previously suspended sentence in the Department of Correction.
The trial court premised its revocation decision on Martin's failure to participate in counseling. But Martin could participate in counseling only if he paid the fees for it-and payment was an explicit requirement listed within his probation conditions. Martin's unequivocal position was that he could not restart counseling until he had enough money for those fees. So, it seems the trial court may have incarcerated Martin simply because he couldn't meet a probation condition "that impose[d] financial obligations" on him. I.C. § 35-38-2-3(g). We simply don't know-highlighting why certain additional findings on a defendant's financial resources or alternatives to incarceration are crucial. Cf. Bell v. State , 59 N.E.3d 959, 963-64 (Ind. 2016) (reiterating that trial courts must "engage in some *1275 inquiry of the defendant to determine his or her ability to pay" before setting restitution as a condition of probation).
Additional findings will, of course, not always be necessary when an indigent defendant's probation is revoked. But they should have been here. The State's probation-violation information highlighted Martin's outstanding balance with his sex offender counseling, and Martin and his counsel stressed repeatedly that Martin's indigency was impeding his ability to attend counseling. On this record, it's unclear whether the trial court believed Martin did, in fact, have financial resources to pay for counseling or, if not, whether an alternative to incarceration was inadequate.
To be sure, this incomplete record hinders our appellate review. But here's what we do know. Martin is now incarcerated. His unrebutted testimony was that he had secured employment and reliable transportation, allowing him to resume counseling. He had not reoffended, and the State never alleged he did anything illegal or put anyone in harm's way while on probation. As a convicted sex offender coming out of Community Corrections, Martin faced limited housing and employment options, which directly led to his homelessness and significant financial hardship. Despite relying on others for transportation to and from his job at Wendy's, he was able to maintain employment for a time while looking for a long-term place to live. But by moving to escape homelessness, Martin lost his job and had no money to pay for his counseling sessions.
This is not to say that Martin's probation conditions were unfair, or that the State was wrong in filing an information of violation. But Section 35-38-2-3(g) and Bearden protect against revoking probation simply because an indigent defendant can't meet a condition's imposed financial obligation. In cases that implicate both Section 35-38-2-3(g) and Bearden , as here, limited additional findings are the appropriate procedural safeguards to ensure that indigent defendants don't end up incarcerated just because they're poor.
For these reasons, I respectfully dissent from the denial of transfer and would remand with instructions for the trial court to make additional findings consistent with this opinion.
Goff, J., joins.

Martin's driver's license has been suspended since 1998, and he testified that he owes several hundred dollars just to begin the process of getting it reinstated.