IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39552-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| BRANDON R. SPEER, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Brandon Speer appeals after a jury convicted him of

assault in the second degree (strangulation), felony harassment (threat to kill), witness

tampering, and two misdemeanor violations of a no-contact order. He argues evidentiary

error, prosecutorial misconduct, insufficiency of the evidence, and he challenges his legal

financial obligations (LFOs). We remand for the trial court to strike the DNA collection

fee and the victim penalty assessment (VPA) but otherwise affirm.

FACTS

Brandon Speer strangled his girlfriend, Jasmine McPherson, while threatening to kill her. McPherson described the attack to at least two officers and provided pictures of her neck, which showed red marks. She also provided and signed a written sworn statement describing the attack. In pertinent part, the statement states:

> When I'm finally ready to leave, [Speer] grabs me by my face, throws me on the bed, yelling you're not going to leave me. I'm struggling, trying to get him off of me. I get up. He grabs me by my throat [and] throws me on the floor. He is 190. I am 130 lbs. He has all his weight on me and choking me to the point of black out, yelling he's going to kill me.

Ex. P-4.

Later, McPherson successfully petitioned for a protective order. Soon after, she stopped cooperating with the investigation and recanted. Her recantation occurred shortly after Speer had placed two recorded telephone calls from the jail in which he asked separate individuals to contact McPherson and tell her to go to the prosecutor's office and recant.

Before trial, the State listed Sheriff's Detective Jackie Nichols as its strangulation expert. Detective Nichols was the wife of Asotin County's elected prosecutor, who tried the case.

On the morning of trial, Speer filed a memorandum objecting to Detective Nichols's testimony. Speer argued that the detective is married to the prosecutor trying

the case, and the marital privilege impaired his ability to cross-examine the detective.

He also argued the relationship created either a conflict of interest or an appearance of

impropriety.  In response, the prosecutor waived his marital privilege and noted the

absence of legal authority in Speer's memorandum.  The trial court overruled Speer's

objection.

In the same memorandum, Speers moved to exclude the detective's testimony on

the basis it was not relevant, or alternatively, to limit it to her expertise, which did not

include testifying about domestic violence.  The trial court overruled Speer's relevancy

objection but limited the detective's testimony to "the difference between choking and

strangulation and the effects on a person such as memory loss."  Rep. of Proc. (Jan. 20,

2023) at 11.

At trial, McPherson denied being strangled or threatened by Speer.  The State

therefore offered, and the court admitted, McPherson's sworn statement and her

testimony to the officers to whom she had described the attack.

The prosecutor elicited from Detective Nichols that he and she are married and

then laid the foundation for her expertise in strangulation.  Speers did not object when the

State offered her as a strangulation expert.  The detective testified that people confuse the

term choking with the term strangulation.  She explained that choking occurs when there

is an object in the throat that prevents breathing, while strangulation refers to pressure

placed around the neck in a manner that deprives a person of oxygen. She also testified

that not much force is required, if applied at the right locations, to strangle a person, and

that a significant percentage of strangulation victims do not have photographable marks

on their necks. At times, the detective's testimony strayed beyond her expertise and,

when Speer twice objected, the trial court sustained his objections.

The jury returned verdicts of guilty on all counts. The trial court sentenced Speer

within the standard range, found him indigent, and imposed a $500 VPA, a $250 fine, a

$100 DNA collection fee, a $100 domestic violence assessment, and a $30 domestic

violence protection order violation assessment. Speer did not object to any of the

financial obligations.

Speer appeals.

## ANALYSIS

DETECTIVE NICHOLS'S TESTIMONY

Speer first assigns error to the trial court permitting Detective Nichols to testify as

a strangulation expert. He argues she was not qualified to testify on such matters.

In general, we will not permit an appellant to raise an argument for the first time

on appeal. RAP 2.5(a). The underlying policy of the rule is to encourage the efficient

use of resources. *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). "The

appellate courts will not sanction a party's failure to point out at trial an error which the

4

trial court, if given the opportunity, might have been able to correct to avoid an appeal and a consequent new trial." *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988).

Here, Speer did not object when the State offered Detective Nichols as a strangulation expert. We therefore decline to consider this argument on appeal.

Speer also challenges the relevancy of the detective's testimony that explained the difference between choking and strangulation. He argues the testimony was unnecessary because a jury instruction, later proposed by the State and given to the jury, correctly defined strangulation. We disagree with Speer's argument.

We review a trial court's evidentiary rulings for an abuse of discretion. *State v. Arndt*, 194 Wn.2d 784, 799, 453 P.3d 696 (2019). Similarly, we give the trial court great deference in its determination of whether evidence is relevant. *State v. Luvene*, 127 Wn.2d 690, 706-07, 903 P.2d 960 (1995).

Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence more or less probable. ER 401. Here, the question of whether McPherson was strangled is a fact of consequence, given that the charge of assault in the second degree (strangulation) required the State to prove strangulation. In her sworn statement and her statements to officers, McPherson described Speer choking her. It therefore was important for the jury to know whether McPherson was choked by Speer or strangled by him. Simply because the jury was provided an instruction that was generally

consistent with the detective's testimony, does not mean the testimony was not relevant. It may have been cumulative, but it was relevant. We discern no abuse of discretion.

Speer, in a conclusory fashion, adds that the testimony should have been excluded because "any probative value was substantially outweighed by the danger of unfair prejudice." Br. of Appellant at 31. He fails to explain how understanding the difference between being choked and being strangled is unfairly prejudicial. We discern no unfair prejudice.

PROSECUTORIAL MISCONDUCT

Speer accuses the State of numerous instances of prosecutorial misconduct. Speer argues he was deprived of a fair trial by the prosecutor calling his own wife to testify as an expert witness, by eliciting testimony from the detective that went beyond her expertise, and by relying on her improper testimony in closing argument.

To prevail on a prosecutorial misconduct claim, "the defendant bears the burden of proving that the prosecutor's conduct was both improper and prejudicial." *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). When the defendant preserves their claim with a timely objection, they must show (1) the prosecutor's remarks were improper, and (2) there is a substantial likelihood the misconduct affected the verdict. *Id.* at 760. When a defendant fails to make a timely objection, the claim of prosecutorial misconduct is waived unless the appellant shows (1) the comments were improper,

(2) the comments were both flagrant and ill intentioned, (3) the effect of the improper

comments could not have been obviated by a curative instruction, and (4) a substantial

likelihood the misconduct affected the verdict. *Id.* at 760-61. The second and third

elements of the test are intertwined and analyzed together. *In re Pers. Restraint of*

*Phelps*, 190 Wn.2d 155, 166, 410 P.3d 1142 (2018).

### *Spouse as expert witness*

Speer first argues the prosecutor's misconduct of calling his own wife to testify as

an expert witness deprived him of his right to a fair trial. He argues the prosecutor's

decision created a conflict of interest, an appearance of impropriety, and impaired his

right to cross-examine the detective.

With respect to creating a conflict of interest or an appearance of impropriety,

Speer fails to cite any case inside or outside Washington that holds that an attorney may

not call their spouse to testify. We may, and in this instance do, decline to address issues

for which a party fails to provide authority. *State v. Miller*, 180 Wn. App. 413, 426, 325

P.3d 230 (2014).

We note that the jury in this case was instructed that it may consider any biases of

witnesses in assessing their credibility. The prosecutor's decision to call his wife as an

expert witness and his waiver of spousal privilege provided potential fodder for Speer's

cross-examination and closing argument. If anything, the prosecutor's choice of calling his spouse as an expert witness undermined the State's case.

*Eliciting testimony beyond scope of expertise*

At times, the State elicited testimony from Detective Nichols that went beyond her expertise on strangulation and into domestic violence. When this happened and defense counsel objected, the trial court sustained the objection. At other times, defense counsel's failure to object permitted the jury to consider testimony that violated the trial court's pretrial ruling. Even if the prosecutor's improper questions were ill intentioned and flagrant, we deem Speer's claim of misconduct waived because any prejudice could have been cured by a timely objection and the court instructing the jury to disregard the testimony. The detective's testimony that exceeded her expertise lacked the type of stinging prejudice that renders instructions to disregard meaningless. To the extent Detective Nichols testified outside the scope of her expertise, we conclude that Speers waived his prosecutorial misconduct claim by not objecting.

*Proper closing*

During closing, the prosecutor referred to Detective Nichols's testimony. Because Speer has failed to provide authority to support his assertion that a lawyer may not call a spouse to testify and because the prosecutor's statements were based on evidence elicited, we discern no misconduct.

SUFFICIENCY OF EVIDENCE

Speer challenges the sufficiency of the evidence as to second degree assault (strangulation), felony harassment (threat to kill), and witness tampering. We find his challenges unpersuasive.

In reviewing a challenge to the sufficiency of the evidence, the test is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980) (plurality opinion). A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). In reviewing such challenges, we are highly deferential to the jury's decision. *State v. Davis*, 182 Wn.2d 222, 227, 340 P.3d 820 (2014) (plurality opinion).

With respect to assault in the second degree (strangulation), McPherson's sworn statement described Speer strangling her to the point of almost blacking out, and the pictures she provided the officers showed red marks on her neck.

With respect to felony harassment, McPherson's sworn statement described Speer yelling he was going to kill her while he was strangling her. In addition, the State elicited testimony from an officer that McPherson told him she thought Speer would carry out his threat.

9

With respect to witness tampering, the jury heard the two telephone calls Speer made from the jail asking each person to contact McPherson and tell her to go to the prosecutor's office and recant. McPherson then went to the prosecutor's office and recanted. And although McPherson testified at trial, she would not testify that Speer strangled her or that he threatened to kill her.

Comparing the evidence described above to the various elements in the to-convict instructions, we conclude that a reasonable trier of fact could have found Speer guilty of the challenged convictions beyond a reasonable doubt. Accordingly, we reject Speer's sufficiency challenges.

LFOs

Speer challenges the LFOs imposed by the trial court. We grant him partial relief.

As noted earlier, we generally review only preserved claims of error. Here, Speer did not object when the trial court imposed any of the LFOs. Nevertheless, where the legislature changes the law after sentencing, we will review a claim of error relating to those changes. *State v. Ellis*, 27 Wn. App. 2d 1, 17-18, 530 P.3d 1048 (2023), *review granted*, 4 Wn.3d 1009 (2025).

The State correctly concedes that, after sentencing, the legislature changed the law so now a trial court may not impose the DNA collection fee or the VPA on indigent defendants. The State further correctly concedes that these changes apply to cases

No. 39552-9-III
*State v. Speer*

pending on direct appeal, such as the instant case. We therefore remand for the trial court to strike those two LFOs.

Affirmed, but remanded to strike two LFOs.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Fearing, J.

Cooney, J.

11